*New-Haven,*
July, 1851.

Cowles
*v.*
Coe.

### Cowles *against* Coe.

On the trial of a *scire-facias* in a process of foreign attachment, the defendant admitted, that he had received of **G**, the principal debtor, goods to a greater amount than the plaintiff's demand; but he insisted, that they were purchased in satisfaction of debts then due him, or were received under a mortgage from **G**, to secure certain notes, and that they had been fairly sold, pursuant to a power in the mortgage, and the proceeds applied in payment of those notes. The plaintiff claimed, that such debts and notes were fictitious, fraudulent and void; and that the defendant had in his hands property of **G**, to a large amount, beyond his just claims. To shew the invalidity and fraudulent character of the defendant's claims, the plaintiff introduced evidence to prove a conspiracy between the defendant and **G**, to defraud all persons whom they could induce to trust **G**; and that the defendant's claims originated in such conspiracy. After a verdict for the plaintiff, it was held, that the evidence so introduced by him, was properly admitted.

Though the title to the goods thus fraudulently obtained, would, as between **G** or the defendant, and the persons of whom they were obtained, be considered as still in those persons; yet while the defendant was claiming a right to hold the goods under such purchase, he could not be permitted to deny the title under which he claimed.

To prove the alleged conspiracy between the defendant and **G**, the plaintiff offered the deposition of **R**, stating declarations made by **G** to **R**, while **G** was engaged in purchasing goods of him, on credit, and relative to **G's** responsibility and means of obtaining money through the defendant's aid; these declarations were objected to, not on the ground that the conspiracy had not been sufficiently proved, but because the defendant was not present when they were made; it was held, that they were admissible, within the rule regarding declarations made by a conspirator in furtherance of the common object.

Where the plaintiff, in such case, offered evidence to prove, that after the failure of **G**, the defendant continued to pay his debts and accept his orders, notwithstanding the defendant's claim, that **G** then owed him, and still owes him, a large sum; it was held, that this evidence was admissible, as conducing to shew, that the defendant's claim was unfounded.

Where the plaintiff, in such case, also offered evidence to shew, that all the goods and effects of **G**, mortgaged to the defendant, as security for certain promissory notes, had been, after the execution of such mortgage, left in the possession and use of **G**, and so continued until the commencement of this process; it was held, that such evidence was admissible, as shewing a secret trust, or at least, that the mortgage was merely colourable.

After the plaintiff had introduced his evidence to prove the conspiracy claimed, he offered testimony to prove certain declarations made by **G**, after his failure, and not accompanied by any act of his, or referring to the defendant; which taken together, amounted to an admission by **G**, that he was a bankrupt, that he had cheated his creditors, and that they had been foolish in trusting him. The court, in submitting the cause to

the jury, stated the matters in issue, and said, that the plaintiff could *New-Haven,* recover only for the goods belonging to *G* in the defendant's hands, or July, 1851. for his indebtedness to *G*, when the copy was left. After a verdict for the plaintiff, it was held, 1. that proof of such declarations was not in strictness admissible; but 2. that, as the facts proved were abundantly sustained, by other evidence, and were indeed conceded, the defendant could not be prejudiced thereby, and a new trial ought to be refused.

The practice of granting new trials, in cases where substantial justice has been done, merely because some immaterial matter was introduced on the trial, ought not to be encouraged.

Cowles
*v.*
Coe.

THIS was a *scire-facias* in a process of foreign attachment. The original action was *assumpsit,* brought by *Luman Cowles,* against *Francis A. Gale,* an absent and absconding debtor, leaving a copy in service, on the 3d day of *April,* 1848, with *Russell Coe,* the present defendant, as the trustee and debtor of *Gale.*

The defendant pleaded the general issue, on which the cause was tried, at *New-Haven, October* term, 1850.

On the trial, the plaintiff required the defendant to disclose on oath, whether, on the 3d day of *April,* 1848, when the copy of the original writ was left in service with him, he, the defendant, had in his hands any of the goods or effects of *Gale,* the original debtor, concealed, so that they could not be found or attached, or was indebted to him ; and thereupon the defendant, being duly sworn, said, that previous to the time specified, *viz.,* in the year 1847, *Gale* became indebted to the defendant, by two several promissory notes, each for the sum of one thousand dollars, and by five other promissory notes, amounting to about fifteen hundred dollars in the whole, and in a further large sum, by book ; that in the course of the year 1847, the defendant received from *Gale,* in *Boston* and elsewhere, goods, wares and merchandize, the property of *Gale,* to apply on his indebtedness, all which was, by the defendant, within the year 1847, fairly sold and applied towards the satisfaction of the book debt ; that in the month of *February,* 1848, he, the defendant, received from *Gale,* in *Boston,* certain other goods, wares and merchandize, the property of said *Gale,* to sell and apply upon one of said notes of one thousand dollars, which property was, within that month, fairly sold and applied in extinguishment of said note ; and that, on said 3d day of *April,*

1848, he, the defendant had in his hands certain articles of merchandize belonging to *Gale*, of the value of eight hundred dollars, but that all the articles of property last-mentioned, were then, and for more than two months had been, mortgaged to the defendant, for the security of said five notes then due to the defendant, with power to sell the same, and apply the proceeds thereof to the notes,—all which articles of property were afterwards, pursuant to such power, fairly sold, and the proceeds applied on the notes—leaving due the defendant from *Gale*, upon the several notes and book debt aforesaid, about the sum of two thousand dollars ; and the defendant swore, that on the 3d day of *April*, 1848, he was not indebted to *Gale*, and had not in his hands any goods or effects of *Gale*, otherwise than as aforesaid ; and the defendant further swore, that the indebtedness of *Gale* to him, due as aforesaid, on said 3d day of *April*, 1848, had not been, in any way, reduced, prior to the trial of this cause ; but that the same, with the interest thereon, was due to the defendant, at the time of trial.

And thereupon the plaintiff offered other testimony to prove, that said notes and book debt were fictitious and void; and that property, to the amount of several thousand dollars, over and above the amount of said notes and book debt,— being the property of *Gale*—had, prior to the 3d day of *April*, 1848, passed from the hands of *Gale* into the hands of the defendant ; of which property, the defendant, in his testimony, had given no account ; and that the defendant, on said 3d day of *April*, 1848, was indebted to *Gale*, and had concealed in his hands, so that it could not be found to be attached, property to a large amount.    To the admission of this testimony the defendant objected ; but the objection was overruled and the testimony received.

And in order to show, that the notes and book debt aforesaid were void, and that the mortgage above-mentioned, under which the defendant, on the 3d day of *April*, 1848, was holding the personal property covered by it, was void, the plaintiff offered to prove, that before any of the aforesaid notes were given by *Gale* to the defendant, and before any indebtedness of any kind had accrued from *Gale* to him, he, knowing that *Gale* was bankrupt, and not fit to be trusted with goods upon credit, entered into a conspiracy with him,

New-Haven,
July, 1851.

Cowles
v.
Coe.

for the purpose of cheating and defrauding all persons whom they could induce to give him credit ; and that the plan of the defendant and *Gale* was as follows : That the defendant, being in good credit, and being a director in the *Meriden Bank*, and being well known among merchants, should, for the purpose of giving to *Gale* a false and deceitful credit, assume, publicly, a close intimacy with him ; that he should go with him from place to place, particularly where the defendant was well known, and *Gale* unknown ; that the two should represent *Gale* to all persons, as a man of wealth, responsibility and credit, and falsely cause all persons to believe, that he would, at all times, be supported by the funds and resources of the defendant and the *Meriden Bank ;* that they should thereby obtain for *Gale* an extensive credit from all persons whom they could deceive, by the false pretences and appearances aforesaid ; that the defendant should, during the early operation of this scheme, and for the sole purpose of insuring its ultimate success, furnish *Gale* with money, from time to time, to enable him to meet promptly his early payments ; that the property obtained by *Gale*, in pursuance of this scheme, should be shifted, from time to time, into the hands of the defendant ; and that when, by such fraudulent contrivances, the credit of *Gale* should become extended to its utmost limit, the defendant should suddenly dispose of and secrete, so that they could not be found to be atttached, all the goods, wares and merchandize, obtained by *Gale* on credit, in manner aforesaid, and fraudulently keep the same, and the proceeds thereof, out of the reach of *Gale's* creditors, while he should again become utterly bankrupt.

And the plaintiff, in connexion with proof of such conspiracy, offered to prove, that in pursuance of said conspiracy, and for the purpose of carrying it into effect, and for no other purpose, the defendant lent to *Gale*, in the outset, the two thousand dollars, constituting the consideration of the two one thousand dollar notes aforesaid ; and that after such fraudulent scheme had gone into operation, the defendant, for the same fraudulent purpose, lent to *Gale* the money and property constituting the consideration of the other five notes and book debt aforesaid ; and that all the goods, wares and merchandize, claimed by the defendant to

*New-Haven,*
July, 1851.

Cowles
*v.*
Coe.

have been received of *Gale*, in *Boston*, and elsewhere, in the year 1847, and all the goods, wares and merchandize, claimed by the defendant to have been received of *Gale*, in the month of *February*, 1848, and sold and applied as aforesaid; and divers other large amounts of goods, not accounted for by the defendant, in his testimony, were, pursuant to said conspiracy, fraudulently obtained by *Gale*, in manner aforesaid, in the year 1847, and previous to the 31st day of *January*, 1848; and did, prior to said 31st day of *January*, 1848, in pursuance of said conspiracy, come into the hands of the defendant; and had not been, on or before the 3d day of *April*, 1848, restored, by the defendant, to *Gale*, or applied, in any way, to the payment of any debt due from him to any person, except the indebtedness of *Gale* to the defendant, incurred in manner aforesaid. To the admission of which proof the defendant objected, as irrelevant and inadmissible, under the issue closed in this action; but the court overruled the objection, and permitted the plaintiff to prove the same.

And thereupon the plaintiff, in connexion with evidence going to prove the existence of the conspiracy claimed by him, offered to read the depositions of *Leverett E. Rice* and *George B. Ripley*, with the declarations of *Gale*, therein contained, made, as the plaintiff claimed, during the continuance of such conspiracy and in furtherance of it.

*Rice's* deposition was as follows: "I am an importer of watches, at No. 16 *Maiden Lane*. I am acquainted with *Francis A. Gale*—first became acquainted with him in the spring of 1846. He was introduced to me, by *Elbridge Morse*, of *Wallingford, Conn.* Mr. *Gale* belongs in *Meriden, Conn.*

The different dates at which I have sold Mr. *Gale*, watches, are as follows:—He bought and paid for watches, to the value of from five to seven hundred dollars, in the years '46 and '47. Mr. *Gale* now owes me the following notes for watches: one note, *Aug.* 7th, 1847, 6 months, payable at *Meriden Bank*, 111 dollars, 50 cents; one note, *Oct.* 16th, 1847, 4 months, payable at *Meriden Bank*, 263 dollars; one note, *Nov.* 19th, 1847, 4 months, payable at *Meriden Bank*, 417 dollars; one note, *Dec.* 21st, 1847, 4 months, payable at

*Meriden Bank,* 174 dollars; one note, *Jan.* 24th, 1848, 4 months, payable at *Meriden Bank,* 216 dollars.

The watches which I have sold to him, are some gold patent levers, gold anchor escapement, gold lepines, and a few silver levers.

Mr. *Gale* stated to me, frequently, that he was engaged in the manufacturing of tin ware; that he owned the factory and stock, and owned a farm, worth four to five thousand dollars, unencumbered. I supposed, from his, *Gale's* statements to me, in reply to my questions about his business, that Mr. *Russell Coe* was connected with him in business: he spoke about Mr. *Coe,* and his assisting him to dispose of the watches, and assisting him with money, when he needed it; and he (Mr. *Gale*) always used the word "we" in speaking of his business.

[Cross-examined, by the defendant, in person.] He always gave me his own notes. I never asked him to give me a company note, for the reason he could not give me any other, without specifying that it was an individual note, if he had a partner. Mr. *Gale* said, that Mr. *Coe* "lent him money, when he was short."

*Ripley* deposed as follows: "I am engaged in the commission paper business, at No. 244, *Pearl-Street,* in *New-York* city. I know *Francis A. Gale,* of *Meriden:* he commenced dealing with us, about the last part of 1846. He bought and gave his notes, which were paid, for about 180 dollars. The following notes are now due to us, by him, for paper:

*Aug.* 30th, 1847, 6 months, to *G. B. Ripley & Co.* 107 dollars, 38 cents; *Oct.* 14th, 1847, 6 months, to *G. B. Ripley & Co.,* 301 dollars; *Nov.* 18th, 1847, 6 months, to *G. B. Ripley & Co.,* 210 dollars, 6 cents; *Dec.* 17th, 1847, 6 months, to *G. B. Ripley & Co.,* 507 dollars, 75 cents; *Jan.* 22d, 1848, 6 months, to *G. B. Ripley & Co.,* 653 dollars, 90 cents; *Oct.* 25th, 1847, 4 months, to *King & Ripley,* 59 dollars, 44 cents.

The notes were principally for writing paper, which was sent to him, packed in cases holding from thirty to forty reams; some of almost every variety that we had.

I also sold him hardware paper, tissue paper, coloured

paper and wrapping paper. I sold him some other, but not a great deal; but there was a large quantity of straw boards.

*Gale* told me, that he owned a farm—a very valuable farm, worth from five to six thousand dollars, unencumbered; that he had a great deal of stock, of various kinds—tin ware and britannia ware, in his hands—that he was buying continually in *New-York*, and kept up a good deal of trading.

He said, that we need not fear to trust him; that his notes would be paid; that when he wanted money, he could raise it out of the *Meriden Bank*, through Mr. *Russell Coe*, who was a director.

We gathered from his, *Gale's*, conversation, that a large portion of this property passed into Mr. *Russell Coe's* hands; that they were constantly engaged in business transanctions with each other.

He, Mr. *Gale*, told us, that part of the fees, for which the last mentioned note was given, were for Mr. *Russell Coe*.

[Cross-examined, by defendant, in person.] I don't know, that any of the property ever went into Mr. *Coe's* hands, except from what Mr. *Gale* said.

To the admission in evidence of the declarations of *Gale*, contained in these depositions, the defendant objected, on the ground that those declarations were not made in his, the defendant's, hearing. The court overruled the objection and admitted the depositions, without expunging any part thereof.

The plaintiff offered to prove, as part of the circumstances establishing the existence of such conspiracy, that, in the year 1847, the defendant and *Gale* went together to *Chauncey Boardman* of *Bristol*, in this state, and also to *E. C. Brewster* of *Bristol*, and to divers other citizens of this state and elsewhere, to whom the defendant was well known, and to whom he introduced *Gale*, as a gentleman wishing to purchase goods on credit, and falsely and fraudulently represented him, to them, to be a man of property and credit, owning estate and doing business in *Meriden*, and one who could safely be trusted; that *Boardman* and *Brewster*, and others, confiding in these representations of the defendant, did thereupon, soon thereafter, within the year 1847, and previous to the 31st day of *January*, 1848, at the request of *Gale*, sell and deliver to him divers large quantities of goods,

wares and merchandise, for which he gave his promissory
notes on time, which had never been paid; he having failed
and become bankrupt on the 31st day of *January*, 1848;
that all the goods, wares and merchandise afterwards, at
different times and previous to the 3d day of *April*, 1848,
were sent by *Gale* and delivered to the defendant, in *Boston*
and elsewhere; and that they were, in part, the same goods
which the defendant claimed to have received and applied
on said book account and note.

*New-Haven,*
July, 1851.

Cowles
*v.*
Coe.

The plaintiff furthermore offered the testimony of *R. I.
Ives*, that in the years 1849 and 1850, (while, as the plaintiff
claimed, the defendant was holding and concealing *Gale's*
property from his creditors, in pursuance of the conspiracy
aforesaid, and while, as the defendant had previously testi-
fied, he had claimed that *Gale* was justly indebted to him as
aforesaid,) *Gale* traded with the firm of *Birdsey & Ives*, of
*Meriden*, on account of the defendant, to the amount of
about two hundred dollars, which the defendant subsequent-
ly paid: and also the testimony of *Hervey D. Bassett*, of
*Meriden*, that in the year 1849, and during the same period
last-mentioned, he delivered goods to *Gale*, to the amount
of thirty-three dollars, upon the verbal order of the defen-
dant, for which the defendant has since paid: and also the
testimony of *Seth H. De Wolf*, that all the goods and effects
of *Gale*, which were claimed to have been mortgaged to the
defendant, as security for said five several promissory notes,
after the execution of said mortgage bill of sale thereof,
were left in the possession and use of *Gale*, as his own, and
so continued, at the time of the leaving of the copy with
the defendant, on said 3d day of *April*, 1848.

And the plaintiff, after introducing testimony tending to
establish the existence of said conspiracy, introduced the
testimony of *Edmund Curtiss*, that after the failure of *Gale*,
in the year 1848, during the continuance of the alleged con-
spiracy, and while the defendant, in pursuance thereof, was,
as the plaintiff claimed, holding and concealing from *Gale's*
creditors, the property fraudulently received by him from
*Gale*, in manner aforesaid, *Gale*, in conversation with *Cur-
tiss*, (not in the presence or hearing of the defendant,) said,
he, (*Gale*,) " had done it up brown; that folks were devilish
fools for trusting him; that twenty thousand dollars would

not pay his debts, but that twenty-one thousand would ; that he had not intended to cheat poor folks, but only intended to equalize the circulation." The plaintiff also introduced the testimony of *William Ives*, that long after *Gale's* failure, but *during* the continuance of the alleged conspiracy, and while the defendant, in pursuance thereof, was, as the plaintiff claimed, holding and concealing from *Gale's* creditors the property fraudulently received by him from *Gale*, in manner aforesaid, *Gale*, in conversation with *Ives*, about his failure, (the defendant not being present,) said, that he (*Gale*) " owed twenty thousand dollars, and did not mean to pay one damned cent of it :" to all of which testimony the defendant objected, but the court admitted it.

The court, in submitting the cause to the jury, informed them, that the action was not brought to recover for the fraud of the defendant and *Gale*, in obtaining goods, but to recover for the goods of *Gale*, in the hands of the defendant, and his indebtedness to *Gale*, at the time the copy of the writ was left with him ; and if they should find, that goods had been fraudulently obtained by the defendant and *Gale*, in the manner claimed by the plaintiff, such finding, of itself, would not justify a verdict against the defendant ; but to enable them to find such verdict, it was necessary for them to find, that, at the time when the copy was left with the defendant, he had concealed in his hands the goods and effects of *Gale*, so that they could not be found to be attached, or that the defendant was indebted to *Gale;* and that such verdict could not exceed the amount in value of such goods and said indebtedness.

The jury returned a verdict in favour of the plaintiff ; and the defendant, conceiving that the court erred and mistook the law in its several rulings, moved for a new trial.

*Kimberly* and *C. A. Ingersoll*, in support of the motion, contended, 1. That if the claim which the defendant sets up in his defence, is a true state of the case, he has done no wrong to the plaintiff, in not delivering up to him the goods, which, it is alleged, came to his hands. He had a right to hold them, not only against the plaintiff, but against any one else.

2. That if the plaintiff has a right to make, in this case,

New-Haven,
July, 1851.

Cowles
v.
Coe.

upon the issue closed, the claim which he makes, (which we deny,) then, upon the state of facts, as claimed by the plaintiff, the defendant has done no wrong to the plaintiff, in neglecting to deliver to him the goods demanded ; that he had been guilty of no neglect of duty ; that the plaintiff had no right to the goods demanded, to apply them to his own use, in any way ; and that the defendant has done nothing of which the plaintiff has any legal right to complain. Upon the claim which he makes, *Boardman, Brewster* and the other creditors, from whom the goods in the hands of the defendant were obtained, would have a right to complain, and would have right to them ; but the plaintiff would have no right to them, and would not be entitled to take them to apply on his execution. *Thompson* & al. v. *Rose*, 16 *Conn. R.* 71. *Chitt. Cont.* 633, 4. *Hill* v. *Perrott*, 3 *Taun.* 274.

3. That it was not competent, for the purpose for which the evidence was offered, for the plaintiff to prove the conspiracy, as claimed. In the first place, it had nothing to do with the issue which the jury were to try. That issue was this, and only this—had the defendant, on the 3d day of *April*, 1848, the goods of *Gale* in his hands, concealed so that they could not be attached ; and was the defendant, on that day, indebted to *Gale?* Secondly, if the facts which the plaintiff offered to prove, were as claimed by him ; still the payment of the notes and book account by *Gale* to the defendant, would be a good application of the property of *Gale* for that purpose, and the plaintiff could not complain of that payment. *Boardman* v. *Roe* & al. 13 *Mass. R.* 104. Thirdly, the plaintiff should not have been permitted to give evidence of the conspiracy and fraud, as claimed, as the plaintiff could not be prejudiced, by such conspiracy and fraud, if it existed. He had not been defrauded of his goods. He could not be prejudiced or defrauded, by any fraud which the defendant may have perpetrated upon *Boardman* and *Brewster*.

4. That if it was proper for the plaintiff to prove the conspiracy, as claimed by the plaintiff, then the evidence offered to prove such conspiracy, was not proper for that purpose. By the course which the cause took, the defendant was put upon his trial, charged with entering into a conspiracy with

*Gale*, to obtain fraudulently from *Boardman, Brewster* and other persons their goods, and with converting them to his own use. Upon such a trial, no evidence but legitimate evidence could be admitted to establish the charge. *He* is on trial, and not *Gale*. Now, in the first place, the declarations of *Gale*, made to *Ripley* and *Rice*, as set forth, in their depositions, were not proper evidence to prove the conspiracy, as claimed. The declarations of a conspirator, not on trial, against an alleged conspirator, who is on trial, made in the absence of the latter, are not evidence against the latter, to establish the conspiracy. 1 *Phill. Ev.* 103. 2 *Stark. Ev.* 403–5. And if the conspiracy had been established, all the declarations would not have been admissible, as they were not all made to carry out the conspiracy, as claimed. Secondly, the declarations made by *Gale* to *Curtiss* and *Ives*, in 1849 and 1850, after the failure of *Gale*, and after the object of the alleged conspiracy had been accomplished, and and after this suit was commenced, in the absence of the defendant, were not legal evidence for the purpose for which the declarations were offered. First, they did not tend to establish a conspiracy, or to affect the defendant, in any way; they only tended to establish fraud in *Gale*. Secondly, if they did tend to establish a conspiracy or fraud in the defendant, they were not admissible. For the declarations of a conspirator against his co-conspirator, *narrative of past occurrences* and of what had been done, are not evidence against the co-conspirator, he not being present when the declarations were made. 1 *Phill. Ev.* 97, 8. 2 *Phill. Ev.* 179. 1 *Greenl. Ev.* § 111. 2 *Burr's Tri.* 578. 539.

5. That the act of *Gale*, in trading, in 1849 and 1850, after the object of the alleged conspiracy had been accomplished, with *Birdsey & Ives*, and with *Bassett*, and which accounts the defendant afterwards paid, did not tend to establish the conspiracy claimed, and was not relevant to any point in controversy between the parties.

6. That the evidence which the plaintiff offered, that the farming utensils and tools which had been mortgaged to the defendant, in *January*, 1848, to secure the payment of the notes for 1,500 dollars, were left in the possession of *Gale*, and that *Gale* was in the possession of them on the 3d of *April*, 1848, was not proper, either to establish the conspir-

acy, or to establish any fact in controvery between the par- ties. If the fact was, as the plaintiff claims it to have been, the defendant could not, under such circumstances, be made liable for the farming utensils thus mortgaged, and left in the possession of the mortgagor. *Central Bank* v. *Prentice* & al. 18 *Pick.* 396.

*Kimberly* and *Peck*, contra, contended, 1. That the introduction, by the plaintiff, of other testimony than the disclosure of the defendant, was proper. First, the statute authorises it; and it may be done, by the plaintiff and defendant. *Stat.* 116. 119. Secondly a long course of decisions in this state, sanctions it. *Dewitt* v. *Baldwin*, 1 *Root*, 138. *Vaughn* v. *Sherwood*, 1 *Root*, 507. *Thompson* v. *Stewart*, 3 *Conn. R.* 182. *Witter* v. *Latham*, 12 *Conn. R.* 403. 1 *Sw. Dig.* 754. (*Dut.* ed.)

2. That this statute, being for the prevention of fraud, should receive, as it always has received, a liberal construction. *Stat.* of 1784, *p.* 34. preamble. *Prudden* v. *Leavenworth*, 2 *Root*, 129. *Star* v. *Tracy*, 2 *Root*, 528. *Enos* v. *Tuttle*, 3 *Conn. R.* 27. *Treadway* v. *Andrews*, 20 *Conn. R.* 384.

3. That the evidence going to shew, that there was a conspiracy to defraud between *Gale* and the defendant, and that the notes and book debt of the defendant against *Gale* originated in that conspiracy, was proper, to prove that there never was any right of set off in the defendant, as against the attaching creditor. *Thomas* v. *Goodwin*, 12 *Mass. R.* 140. *Jarvis* v. *Rogers*, 15 *Mass. R.* 414. *Crowninshield* v. *Kittridge*, 7 *Metc.* 520. *Goodrich* v. *Downs*, 6 *Hill*, 438. *Harris* v. *Sumner*, 2 *Pick.* 129. 137. *Raymond* v. *Sellick*, 9 *Conn. R* 480.

4. That evidence having been introduced, to shew, that a conspiracy existed betwen *Gale* and the defendant, to defraud the creditors of *Gale*, all the facts and declarations of *Gale* connected with, and explanatory of, the fraudulent transaction, were admissible. *Am. Fur Co.* v. *United States*, 2 *Peters*, 365. *Foster* v. *Hall*, 12 *Pick.* 89. *Bradley* v. *Obear*, 10 *N. Hamp.* 477. *Tappan* & al. v. *Powers* & al. 2 *Hall*, 297. 298. *Benham* v. *Cary*, 11 *Wend.* 83. *McKenney* v. *Dingley*, 4 *Greenl.* 172. *Seaver* v. *Dingley*,

*New-Haven,*
July, 1851.

Cowles
*v.*
Coe.

*Id.* **306.**    *Aldrich* v. *Warren*, 4 *Shep.* 465.    *Gray* v. *Na-tives*, 1 *Pike*, 557.    *Clayton* v. *Anthony*, 6 *Rand.* 285. *Welch* v. *Cooper*, 3 *Law Rep.* (new series) 466. 1 *Greenl. Ev.* § 111. 112.    *Nichols* v. *Dowling*, 1 *Stark. Ca.* 81. *Wright* v. *Court* & al. 2 *Car. & Pa.* 232. (12 *E. C. L.* 104.)    *Hawes* v. *Daigley*, 5 *Shep.* 341.    *Stoveall* v. *Farm. & Mech. Bank*, 8 *Sm. & Marsh.* 305.

5. That the defendant could not have been prejudiced, by any of the evidence relating to the fraud; for the judge was careful to instruct the jury, that they could not find a verdict for the plaintiff for the fraud; but that they must find, that, at the time the copy was left in service with the defendant, he had concealed in his hands the goods and effects of *Gale*, or that *Gale* was indebted to him.

6. That the writ of *scire-facias* is a judicial writ, and is never issued, except upon a matter of record.    When counting on a judgment, it never sets forth an original cause of action—it is only a continuation of the former suit, and not an original proceeding. *Jacob's Law Dict.* art. *Sci. Fa. Rev. Stat.* 61. 72. 89. 289. 424.    2 *Archb. Pract.* 76. 81. 84. 88. 1 *Chitt. Plead.* 269.    *Osgood* v. *Thurston*, 23 *Pick.* 110. First, the cause of action against the present defendant, is the judgment of the city court, rendered in the city of *New-Haven*, against *Gale*.    The effect of this writ is merely to enforce that judgment, by granting an execution against *Coe*. But secondly, the statute fixes the matter, by making it peremptory, that the writ shall issue from, and be returned to, the court having cognizance of the original action.    *Rev. Stat.* 116.

HINMAN, J.    The questions raised upon this motion relate to the rulings of the superior court in the admission of testimony.    The issue depended upon whether the defendant, at the time the copy was left with him, as the garnishee of *Gale*, had goods liable to attachment concealed in in his hands and belonging to *Gale*, or was indebted to him.

The defendant testified, that he had no such goods, and was not indebted.    He admitted, that he had received goods to a greater amount than the sum claimed; but insisted, that they were rather purchased in satisfaction of debts due him, or, were received under a mortgage from *Gale*, to se-

cure certain notes; and that they had been fairly sold, pursuant to a power contained in the mortgage, and the proceeds applied in payment of said notes.

The plaintiff's claim was, that the debts and notes, claimed by the defendant as due from *Gale*, were fictitious, fraudulent and void; and also, that the defendant had property, to a large amount, over and above all his honest claims.

The case, then, turned upon the validity and *bona fide* character of the indebtedness of *Gale* to the defendant.

In order to shew, that it was invalid and fraudulent, and the mortgage void, the plaintiff was permitted to prove, that before any such indebtedness accrued, *Coe* and *Gale* entered into a conspiracy to cheat and defraud all persons whom they could induce to trust *Gale*, by fraudulently representing to them, that he was a man of wealth, responsibility and credit; and that he would be supported by the funds of *Coe;* and that, for this purpose, *Coe* should, from time to time, furnish money to enable *Gale* to meet his early payments; and the property thus obtained by *Gale* should be shifted into *Coe's* hands, and he should dispose of and secrete it, so that it could not be attached; and the proceeds thereof should be kept from *Gale's* creditors, while, he, in the meantime, should become utterly bankrupt; and in connection with this, that the debts and notes which *Coe* claimed to be due from *Gale*, all originated in this fraudulent combination, and for money lent to him for the purpose aforesaid; and under which fraudulent conspiracy, much of the property in the defendant's hands was obtained.

We think this testimony was properly admitted. Indeed, it is not very strenuously claimed, that, for debts thus corruptly contracted, *Coe* would have a right, as against *bona fide* creditors of *Gale*, to retain property to pay himself. His position is no better than that of a purchaser of property for the purpose of defeating the creditors of the vendor from obtaining payment; and such a purchaser cannot retain the property against creditors, notwithstanding he pays the full value of it.

It is insisted, however, that the plaintiff's claim shows, that the property never belonged to *Gale*, but to the persons of whom he fraudulently obtained it. That would be so, undoubtedly, in a contest between *Gale* or *Coe*, and the per-

New-Haven,
July, 1851.

Cowles
v.
Coe.

sons of whom the property was obtained : but with that, the plaintiff has nothing to do, until *Coe* shews, that he has redelivered it to the original owners, or has accounted to them for it.   He, cannot, while he is claiming the property under his fraudulent purchase, prove, or use, his own fraud, to defeat the plaintiff.   If he had accounted to the original owners for it, it might be inequitable to compel him to account for it again to the plaintiff; but, until he does that, it does not lie in his mouth to deny the title under which he claims.

Again, it is said, that the conspiracy was a fact not within the issue, and, therefore, not admissible.   It is true, the only question was, whether the defendant had property in his hands belonging to *Gale*, or was indebted to him ; and not, how the property was obtained.   But that he had such property, was an admitted fact ; and he set up *Gale's* indebtedness to him, as a reason for his not accounting for it to the plaintiff.   The conspiracy was then shewn, for the purpose of evincing the fictitious and fraudulent character of this pretended indebtedness ; and this being shewn, the defendant was left without excuse, with *Gale's* property in his hands, to be accounted for at its fair value.   *Coe* testified and claimed, that *Gale's* indebtedness to him was *bona fide*. This evidence went directly to contradict him, and to disprove his claim.   We do not see how it could have been excluded.

It is claimed, that the declarations of *Gale*, made to the witnesses *Rice* and *Ripley*, as stated in their depositions, were improperly received, the defendant not being present when they were made.

The rule on this subject, is, that any declaration made by a co-conspirator, pursuant to the common object, and in furtherance of it, is admissible against all of them, when the combination is once established.   1 *Phil. Ev.* 94, 5. &c. These declarations were not objected to, on the ground that sufficient evidence of the combination had not been given. Had they been objected to, on that ground, it would have been for the court to determine, whether there was sufficient evidence to warrant the jury in finding such a combination as was claimed.   As the parties treated the evidence on that point as sufficient, we do not see any other objection that

New-Haven,
July, 1851.

Cowles
v.
Coe.

could be raised to these declarations. They appear to have been made while *Gale* was engaged in purchasing goods of the witnesses on credit, having first paid for some that he had previously bought of them ; and his representations in regard to his responsibility and his means of obtaining money, by the aid of *Coe*, were such as were well calculated to carry out the main object of the combination. We do not see, therefore, why they do not come strictly within the letter of the rule.

The court permitted the plaintiff to prove the conduct of *Coe* in paying the debts, and accepting orders of *Gale*, after his failure. This is objected to, as improper ; but, upon what plausible ground, we have been unable to see. If the defendant's present claim is correct, that *Gale*, on his failure, owed him, and still owes him, a large sum, it would seem to be unaccountable, that he should voluntarily go on increasing the indebtedness ; and his doing so, is, as it seems to us, very strong evidence, from which the jury might reasonably draw the inference, that his present claim was unfounded. It is evidence, in the nature of a confession or admission, inconsistent with his present claim ; and is, perhaps, as much to be relied upon as any actual admission could be, inasmuch as there is but little room for misconstruing conduct of this description.

Of a similar character was the evidence going to show, that the mortgaged property was left in *Gale's* possession, after the mortgage. This, in ordinary cases, would be conclusive evidence of a secret trust, which would render the mortgage fraudulent in law ; and, in any aspect, it is strong evidence, that the mortgage was a mere colourable thing.

The remaining question, is, whether the declarations of *Gale* to *Edmund Curtiss* and *William Ives* were properly received. These declarations were not offered, as in any way tending to prove the combination claimed. The motion shews, that they were offered and received, after the plaintiff's evidence on that subject, had been introduced. Had they been admitted for that purpose, or if, under the circumstances, they could have had any influence with the jury on that point, we should feel bound to advise a new trial, on this account.

They do not appear to have accompanied any act of *Gale*,

in pursuance of the combination, and, therefore, were not made in furtherance of it. But they seem, rather, to be in the nature of admissions of *Gale,* after his failure, of what he, individually, had done. He did not allude to the defendant, in any part of them. Taken together, they amount to an admission by *Gale,* that he was a bankrupt; that he had cheated his creditors; and that they had been foolish in trusting him. No one can doubt the truth of these admissions, certainly not the two first of them; and if his creditors could have known him, as he appears in the evidence in this case, no one could doubt the folly of giving him credit. Still if the evidence could have had any injurious effect upon the defendant, he would be entitled to a new trial. We think, however, they could have had no such effect; and the practice of granting new trials, in cases where substantial justice has been done, merely because some immaterial matter has been introduced on the trial, ought not to be encouraged. In this case, the truth of these admissions of *Gale* stand out, prominently, some one or more of them, in almost every piece of the evidence reported in the motion; and the whole trial seems to have proceeded upon the ground of the hopeless bankruptcy of *Gale,* and his dishonesty in contracting his debts; and we are told, that such was the case. The defendant himself stated, that he had a large debt against him. So the testimony of *Rice, Ripley, Boardman, Brewster* and others, shews large debts in favour of each of them; and that the debts were contracted, by means of his fraudulent representations.

Now, as this evidence did not tend at all to connect the defendant with *Gale,* and was not introduced or used for that purpose; and, as the facts which it did prove, were abundantly sustained, by other evidence in the case; and especially, inasmuch as they were conceded facts, and were acted on, as such, throughout, we do not see how the defendant could have been prejudiced by them. And in this connexion, it is not perhaps unworthy of notice, that the jury were very carefully cautioned against suffering the fraud of *Gale,* or of the defendant, from having any undue weight with them; and they were distinctly charged, that the plaintiff could not recover, on the ground of the fraud of any of the parties; but only for goods belonging to *Gale* in the

defendant's hands, or his indebtedness to him, at the time of leaving the copy.

Under all these circumstances, although we have not been able to see the strict propriety of the evidence, yet, for the reasons above given, we do not advise a new trial.

In this opinion the other Judges concurred.

New trial denied.