WILLIAM L. BANNING, Appellant, *vs.* HENRY H. SIBLEY, Garnishee, Respondent.

The Minneapolis & Cedar Valley R. R. Co. by resolution delivered into the possession of the Respondent a certain amount of State Rail Road Bonds, "as Trustee for the protection of the creditors of the Co., so far as they can be applied to that object," and providing, among other trusts, that the Trustee might pay them out to such creditors as would receive them, at the rate of ninety five cents on the dollar; reserving certain Bonds from the effects of the trust, and providing further, that if any of said Bonds should remain in the hands of the Trustee on the first day of October (then) next, which should not have been accepted by creditors in accordance with the trust, they should be delivered to the Company. After this, the Board of Directors paid out ten of the same Bonds to a creditor of the Company who was not named or provided for in the resolution. *Held*—That by the resolution, and the course of the Company in regard to the Bonds, they did not create an assignment for the benefit of creditors, but simply an agent and agency for a particular purpose.

An insolvent cannot, in his assignment, dictate to his creditors the terms upon which they are to receive any benefit therefrom, or stipulate the price at which, or the time within which, certain of the property is to be received by them. Such conditions are regarded as oppressive, coercive and unjust as against creditors.

An assignment of an insolvent debtor, providing for a resulting interest to the assignor, without paying all the creditors, is, of itself, evidence of an intent to hinder, delay and defraud creditors, and is void as to them.

A Garnishee (under *Chap.* 80, *Sec.* 21, *Rev. Stat. of Minn.*) is subject to the same liabilities and entitled to the same privileges as any other witness. The party calling him takes his answer at his own risk, and is bound by it. He cannot contradict his own witness; and if he introduce other testimony, it must be such as is confirmatory, only, of the testimony of the Garnishee.

The Bonds of the Minneapolis & Cedar Valley R. R. Co. are "property" within the meaning of the Garnishee Act, and the garnishee process was intended to reach this species of property. They are also the subject of attachment, provided the officer can find them so as to take them into his actual possession.

If the facts stated by a Garnishee leave a reasonable doubt as to whether he is owing the principal debtor, or has property in his hands belonging to him, judgment should be rendered in favor of the Garnishee.

Appeal from an order of the District Court of Ramsey County, denying a motion for judgment against the Respondent, as Garnishee, upon his disclosure under the garnishee process,

The opinion of the Court contains a full statement of the case.

The following are the points and authorities relied upon by the Counsel for the Appellant :

*First.*—The resolution under which the Respondent holds the property in question—as an assignment—would be void as to creditors, and the Appellant being a creditor, would therefore be entitled to take the same in execution as the property of the Company, and to the same end might employ the statutory remedies in aid of execution, as attachment, garnishee proceeding, &c.

1. Because it only provided for part of the creditors.

2. Because it contained stipulations and conditions to be acceded to before a creditor could receive any benefit—exhibiting an attempt to coerce the creditors to the terms of the debtor, and to compel them to take the property of the debtor at the price or estimate dictated by the debtor.

3. Because it provided that the surplus of Bonds remaining in the hands of the Respondent on the 1st of October, 1857 should be paid over to the debtor, instead of being applied to the payment of the debts.

4. Because the Respondent was precluded from converting the assets into cash, and was required to hold the property in his hands, or to distribute it in parcels and upon terms dictated by the debtor.

5. Because the debtor meddled with the assets and continued to control them after the passage of the resolution—ten of the Bonds included in the resolution being delivered over to A. R. Morrell, by order of the debtor, after the resolution had passed.

6. Because the resolution as an assignment operated to delay and hinder creditors, and was fraudulent on its face. *Revised Statutes Minnesota, Sec.* 1, *Chap.* 64, *R. S.,* page 269 ; *Hyslop vs. Clark,* 14 *Johns.* 458 ; *Austin vs. Bell,* 20 *Johns.* 442 ; *Seaving vs. Brinkerhoff,* 5 *Johns. Ch.* 329 ; *Grover vs. Wakeman,* 11 *Wend,* 187 ; *Armstrong vs. Birne,* 1 *Edwards Ch.* 29 ; *Lentilhen vs. Moffat,* 1 *Edwards Ch.* 451 ; *Burrill on Assignments,* (*Ed.* 1848,) 167 ; *Goodrich vs. Downs,* 6 *Hill,*

438; *Barney vs. Griffin*, 4 *Sanf.* 552, *and* 2 *Comst.* 365; *Leitch vs. Hollister*, 4 *Comst.* 211; *Nicholson vs. Leavitt*, 2 *Selden*, 510; *Brigham vs. Tillinghast*, 3 *Kern.* 215; *Burrill on Assignments*, 211, 316, 442; *Ward vs. Tingley*, 4 *Sanf. Ch.* 476; *Brigham vs. Tillinghast*, 15 *Barb.* 618; *Bank of Silvercreek vs. Talcott*, 22 *Barb.* 552.

*Second.*—The resolution, although viewed as an assignment, was revocable up to the time of the creditors accepting its provisions, and revocable as to any creditor who had not assented to or accepted its provisions; it was, therefore, to this extent a mere power, which did not divest the title of the debtor. *Smith vs. Keating*, 6 *M'Gr. & Scott*, 136, *cited in Burrill on Assignments, page* 338; *Burrill on Assignments*, 333; *Rankin vs. Loder*, 21 *Alabama*, 380; *Allen vs. Montgomery & N. P. R. R. Co.*, 11 *Alabama*, 437; *Evans vs. Lamar*, 21 *Alabama*, 333–335; *Fellows vs. Vicksburg R. R. & Bkg. Co.*, 6 *Rob.* 246 (*Missouri*); *Shattuck vs. Freeman*, 1 *Metcalf*, 10–13; *Halsey vs. Whitney*, 4 *Mason*, 206–215; *Burrill on Assignments, pp.* 334, 339, 340; *Hill on Trustees, pp.* 336, 337; and therefore the property may be reached by an attaching creditor. *Viall vs. Bliss*, 9 *Pick.* 13; *Hooper vs. Hills*, 9 *Pick.* 435; *Bradford vs. Tappan*, 11 *Pick.* 76; *Brewer vs. Pitkin*, 11 *Pick.* 298; *Hastings vs. Baldwin*, 17 *Mass.* 556; *Ingraham vs. Geyer*, 13 *Mass.* 147; *Harris vs. Sumner*, 2 *Pick.* 129; *Copeland vs Wild*, 8 *Greenl.* 411; *Boyden vs. Moore*, 11 *Pick.* 363; *Everett vs. Walcott*, 15 *Pick.* 94.

*Third.*—The resolution was not intended to be other than a mere power—

1. Because no formal assignment was executed.

2. Because the debtor afterwards rescinded or revoked it in part by the order for the transfer of ten Bonds to Mr. Morrell, who was not provided for in the resolution.

3. Because the Respondent was not authorized to convert or alien the property, and was merely authorized to distribute it among the creditors.

4. Because the construction of the resolution otherwise shows it to be but a power.

*Fourth.*—The property in question was subject to be

attached, taken in execution or garnisheed, and the garnishee in this instance became liable under the statute for these bonds to the Plaintiff, as property of the debtor in his hands at the time of the service of garnishee summons. *Rev. Stat.*, *Sec.* 3, *Chap.* 91, *p.* 451; *Sec.* 15 *Ibid.* *p.* 453; *Sec.* 140, *Sub.* 2 *and* 3, *Chap.* 70, *p.* 360; *Sec.* 91, *p.* 363; *and see Massachusetts authorities before cited.*

The following are the points and authorities relied upon by the Counsel for the Respondents:

*First.*—The Respondent at the time of the service of the garnishee summons upon him had "no property, money or effects in his hands or possesion, or under his control, or due from him to the Defendant in the action," and no judgment could be rendered against him. *Nash vs. Gale*, 2 *Min. R.*

*Second.*—The bonds in the possession of Respondent at the time of the service of the garnishee were held by him in *trust* for the benefit of the creditors of the Defendant in the action, and were not subject to garnishment. 8 *Pick.* 298 *and* 555; 8 *Maine* 411; *Drake on Attachment*, 431 *and* 493 *and cases there cited.*

*Third.*—They were not even subject to levy and sale upon execution. The garnishee therefore cannot be enforced. *Drake on Attachment*, 425, 436.

*Fourth.*—The resolution under which the Respondent held the bonds at the time of the service of the garnishee constituted an executory contract with the Defendant in the action as irrevocable, and did not terminate until October 1st, 1859, in and by which contract the Respondent acted as agent for the Company and trustee for the creditors of the Company, and the trust created was valid and legal. The trust was free from fraud, or the suspicion of fraud, and the Company had parted with the possession of the bonds in good faith, and had no right to the possession of them. The trust was therefore valid. The assignment of the bonds for the benefit of the creditors was a sufficient consideration to support the transfer. *Burrill on Assignments*, 239 *Ed. of* 1858, *and cases there cited.*

*Fifth.*—To avoid the trust the *fraud* must be in the assign-

ment *itself*. No subsequent fraudulent dealings between the assignor and assignee can reinvest the property in the assignor or render them liable to levy as his property. *Burrill on Assignment*, 314.

*Sixth.*—The delivery of the bonds to the Respondent was *actual :* the possession of them was *actually* changed : such change was *continued* and was an *exclusive delivery*. But even if a portion of the property assigned was retained by the assignor, it did not impair the validity of the trust. The assignee could claim possession of the whole. *Pike vs. Bacon,* 8 *Shepley* 280; *Wilson vs. Forsyth,* 24 *Barb.* 105 ; *Burrill on Assignment,* 327 *and* 328; 1 *Sandf. Ch.* 89, *where it states that the possession may be explained by proof.*

*Seventh.*—The Company had full authority and power to create the trust in the manner and form shown by the garnishee disclosure. *Angell and Ames on Cor.* 217, 329, *and* 602.

*Eighth.*—It is simply setting aside a *particular fund* out of which to pay a *particular class* of debts in a *particular manner* and is valid. *Angell and Ames on Corps,* 187 *and* 191. In case of partnership this point is well settled. *Burrill on Assignment,* 43 *and* 44, *and cases there cited.* The same rule applies to corporations. *Burrill on Assignment,* 602–3–4.

*Ninth.*—It is valid as a partial assignment, and all that it is competent for the Court to do is to see that the trust is executed. *Burrill on Assignment,* 131–2, *and cases there cited ;* 4 *Halstead N. J.,* 120, 136, *and* 193 ; *Burrill on Assignment,* 108, *and cases there cited.* The Court has no authority under our act relating to garnishment, to entertain and decide questions affecting the rights and interests of parties other than the parties to the suit.

H. J. HORN, Counsel for Appellant.

VAN ETTEN & OFFICER, Counsel for Respondent.

*By the Court*—ATWATER, J. The Appellant in September last, obtained a judgment in the District Court for Ramsey County, against the Minneapolis and Cedar Valley Rail Road Company, for the sum of $2781,90. During the pendency of

that suit, an action was commenced against Henry H. Sibley, as garnishee of said Rail Road Company, the summons requiring him to appear and answer thereto on the 12th of September, 1859. The answer disclosed *inter alia* the following facts, viz:

"At a regular meeting of the Board of Directors of the Minneapolis and Cedar Valley Rail Road Company, the following resolution in relation to the bonds was adopted:

*Resolved*, That the one hundred State Rail Road Bonds, now ready for delivery to the Company by the Governor, and twenty-five bonds still accruing to the Company for grading already performed, be and they are hereby delivered into the possession of Henry H. Sibley, as Trustee, for the protection of the creditors of the Company, so far as they can be applied to that object. Said Trustee being hereby authorized and empowered to pay them out to such creditors of the Company as will receive them in a pro-rata proportion at the rate of ninety-five cents on the dollar, and upon ascertaining the balance to the several creditors who will receive bonds, after the payment shall be made, said Trustee is further empowered and authorized to draw drafts upon the President of the Company, for such balance, upon the delivery to the said Trustee of the evidence of indebtedness held by such creditors, and all drafts of the Trustee in favor of any creditor or creditors of the Company, are hereby declared to be legal and conclusive evidence of indebtedness of the Company to the amount of such draft or drafts. It being understood that the contractors for grading are not to be affected by the above provisions, but are to be paid according to the terms of their several contracts; and exempting from the operation of this resolution, also the one bond agreed to be paid Chas. A. Wheaton for services, and one bond to W. P. Causine, Land Agent for the Company in Washington, in full for services rendered by him, which bonds are to be deducted from the above number 125. It being further understood, that the security herein contemplated, shall not extend to the claims of the Directors of the Company for services rendered by them. *Provided*, that in case any of the said bonds shall remain in the hands

of the Trustee on the first day of October next, which shall not have been accepted by the creditors of said Company, in accordance with this resolution, then those bonds remaining shall be delivered to the Company, and they, or the proceeds thereof, shall be devoted to the satisfaction of the debts owing by the said Company, and the trust hereby created shall be considered discharged."

Another resolution directed the Chief Engineer to furnish the said Trustee a list of the liabilities of the Company, for his guidance in settling with creditors. These resolutions were passed July 21, 1859.

The garnishee further stated that "before the schedule of the Chief Engineer referred to in the resolution, was delivered to me, the Board of Directors paid over to A. R. Morrell, ten of the State Bonds mentioned in the resolution, numbered 503 to 512 inclusive, on an indebtedness due him by the Company, and which does not appear in the schedule of the Chief Engineer. Deducting the two bonds mentioned in the resolution, and the ten bonds to Morrell, there remained in my hands eighty-eight bonds of the hundred mentioned in the resolution, which were placed in my hands on the 22d or 23d of July, 1859."

The disclosure goes on to state that certain creditors had accepted and received bonds on the terms proposed in the resolution, "leaving a balance of fifty-three bonds of one thousand dollars each, belonging to the Defendant, in my hands."

The first question presented for consideration under this disclosure is, what was the nature of the power conferred upon the garnishee by the resolution above quoted; and in what relation does he stand to the Rail Road Company? He has been treated in the argument as an assignee for the benefit of creditors, and the resolution, it is claimed, is an assignment of the property in question. Upon an examination of the wording of the resolution, and the action of the Company under, or rather, notwithstanding it, we think such a view cannot be sustained. One of the primary and most necessary elements of an assignment, is the disposal or transfer of the

title and interest of the assignor in the thing assigned. "An assignment is properly the transfer of one's whole interest in any estate, but it is now generally appropriated to the transfer of chattels, either real or personal, or of equitable interests;" *Watkins on Con. C.* 2, *Ch.* 9, *p.* 227. Sir William Blackstone defines an assignment to be, "properly, a transfer or making over to another of the right one has in any estate," &c.; 2 *Blackstone's Com.*, 326; *Burrill on Assignments, p.* 82, *note* 1. In an assignment for the benefit of creditors, whether general or partial, the authorities hold that to be valid, the assignor must part with his *whole* interest in the thing assigned. In the resolution by virtue of which the garnishee holds these bonds, there are no words used which can be construed as conveying an intent on the part of the Company to part with its title or interest in these bonds. The language is that "they be *delivered into the possession* of Henry H. Sibley," &c. On the contrary, the fair inference is from the whole resolution, that the Company never intended to divest itself of its title. For it has further provided, the bonds "remaining shall be delivered to the Company," &c. And after the passage of the resolution, the Company itself disposed of ten of these bonds, which action is inconsistent with the view that the Company intended to part with its interest in, or control over these bonds. The ordinary form of an assignment for creditors, "is that of an absolute transfer, to sell and pay at all events." None of the apt words ordinarily used in assignments, either in the granting or *habendum* clauses are found in this resolution, but simply the right of possession in the garnishee, and that limited as to time and purpose.

But if it be an assignment, it is clearly void as against creditors. To say nothing of the fact, that at most it only purports to be a partial assignment, and made for the benefit of a part of the creditors of the Railroad Company, it contains provisions which are contrary to the principles of justice and equity, and the well settled rules of law on this subject. The Company have assumed the right to dictate to their creditors the terms upon which they are to receive any benefit from this assignment, stipulating both the price at which, and the time

within which the bonds must be received by their creditors. Such conditions are regarded as oppressive, coercive and unjust as against creditors, and several of the States, including New York, Pennsylvania, Virginia and Mississippi, have held instruments containing them void. *Burrell on Assignments, p. 95, notes and cases cited.* In addition to this, the resolution provides that the surplus remaining in the hands of the trustee on the 1st of October should be returned to the debtor, instead of being applied to the payment of the debts of the Company. It is true the resolution states that the bonds or proceeds thereof shall be devoted to the satisfaction of the debts owing by the Company, but this by no means obviates the objection to this provision. For there being no specific application of the property to the payment of any debt or debts, the Company would then have full control of the bonds, and might devote them to such purpose as it pleased, as there is nothing contained in the resolution which would prevent the Company from diverting the proceeds to a different object from that specified in the resolution. In the case of *Truitt Bros. & Co., Plaintiffs in Error, vs. J. Y. Caldwell et al., Defendants in Error,* argued the present term, this Court held that a similar provision rendered the assignment in that case void. It will be further observed that the resolution not only makes no provision for converting these bonds into cash by the trustee, but prohibits him from doing this. One of the most obvious and essential requisites of an assignment for the benefit of creditors, is the granting of the power to the assignee to dispose of the property assigned for cash, and apply the proceeds to the payment of debts. Still other objectionable features exist in this instrument viewed as an assignment, but suffice it to say, that if such provisions can be sustained in assignments for the benefit of creditors, carried out to their legitimate consequences, they would not only operate to hinder, delay and defraud creditors, but would effectually prevent them from enforcing their claims against the debtor at all. If property may be placed in the hands of an assignee or trustee, so as to place it beyond the reach of creditors for the length of time attempted in the case at bar,

it may be so placed for any number of years, and if at the end of the time, the creditors should not comply with the conditions imposed, the debtor would be permitted to resume his possession. That courts of justice should sustain provisions in instruments of assignment leading to such pernicious consequences, we cannot believe will be seriously urged. Courts cannot hesitate to find a fraudulent intent, in provisions, the inevitable and necessary effects of which must be to frustrate the attempts of creditors to secure their just demands.

But we think a fair and just construction of the resolution, and the course pursued by the Company in regard to the bonds in question, must lead to the conclusion, that the Company intended simply to constitute and appoint an agency and agent for a particular purpose. The object of the Company was manifestly not to devote all their property to pay all their debts, either with preference, or equally pro-rata. Nor was it proposed to make a sale of the property in any manner, which was placed in the hands of the trustee. And it is equally manifest that the Railroad Company did not propose to divest itself of the title to these bonds, nor even to place the possession of them beyond its reach. Its object only was to use certain of its property, at a certain price, to pay certain debts. And being a corporation, it was necessary that a resolution declaring the object should be adopted, and an agent appointed to act in place of and for the corporate body. One of their number, Henry H. Sibley, is selected as the agent of the corporation, and the bonds placed in his hands. And though in the resolution he is termed a "trustee," that can have little influence in determining his true relation to the Company. This must be determined from the object to be accomplished, the nature of the duties required of the party selected to act in the premises, and the powers conferred on him. These duties, in the case at bar, are such as would naturally belong to an agent, and only just sufficient power was vested in the Respondent to discharge them. He was entrusted with no discretionary powers, was authorized to do no act requiring the exercise of judgment, but was only the instrument of the Company to perform certain acts, in

accordance with the directions of the Company, and which, from the necessity of the case, must be done by some person acting for the Company.

That the possession of the agent, is in law, the possession of the principal, will not be disputed, and that in fact, as between the Company and the Respondent, it was understood that the Company had the right at any time to resume possession of these bonds, is manifest from the fact that the Company did take possession of a part of these bonds without objection so far as appears on the part of the respondent. Nor does it appear that the Respondent incurred any liability except to his principal in accepting these bonds, and had he chosen at any time before the expiration of the sixty days to return these bonds to the Company, he could not have been held liable to the creditors for such act. Whether, therefore, the resolution in question be considered as an assignment, or the appointment of an agent, we are equally satisfied that the title to, and interest in the bonds in question remained in the Railroad Company.

We are next to consider whether this property can be reached by the garnishee process. *Sec.* 1, *Chap.* 80, *Rev. Stat.* prescribes in what cases, and under what conditions the process may issue. Section nine of the same chapter provides when judgment may be rendered on the answer of the garnishee, and declares that " if it appear from the testimony of the said garnishee, or other testimony that may have been taken in the case, that the said garnishee is indebted to the Defendant, or that he has property belonging to the Defendant in his possession, the Court shall proceed to render judgment against the said garnishee," &c. From section twenty-one of the same chapter, it might be inferred that a jury trial could be had in these cases. It is by no means clear what was the intent of the legislature, in adopting that section. No provision is made for empannelling a jury, nor for forming an issue, but the whole scope of the chapter seems to treat the proceeding as an " examination " of the garnishee only. The garnishee is treated of in all respects as a witness, and we think the intent of the Statute is that he should be subject to the same

liabilities, and entitled to the same privileges as any other witness. The party calling or summoning him, takes his answer at his own risk, and is bound by it to the same extent as he would be by his own witness in the trial of any cause in which an issue is joined. If this view be correct, it would seem to do away with the necessity for a jury trial in any of these cases. For if the facts stated by the garnishee, leave a reasonable doubt as to whether he is owing the principal debtor, or has property in his hands belonging to such debtor, judgment should be rendered in favor of the garnishee. And as a party on a trial (as a general rule) cannot contradict his own witness, so he should not be permitted to here; and if other witnesses can be examined in the proceeding, as it would seem was intended by section nine of said chapter, such testimony must refer to that which is confirmatory only of the testimony of the garnishee. *In Howes et al. vs. Loughton and Trustees*, 8 *Pick.* 67, it was held that in a trustee process, no evidence can be admitted to charge the trustee, except what he discloses in his answer. But at all events, if the garnishee or party appearing in opposition to the disclosure, claims the right under this Statute, of having the facts of the case submitted to a jury, he must interpose that claim in the Court below, and have the decision of that Court upon this point, before he can urge it here. Otherwise he will be held to have waived it, and to have submitted the case to the decision of the Court. In the case at bar, however, the question does not properly arise, as there is no controversy as to the facts stated in the disclosure. It is only a question of law, as to the ownership of the bonds in dispute.

It was urged by the learned counsel who argued in support of the attachment against these bonds in the case of *Caldwell vs. Sibley*, that, though the conveyance to the Respondent was void as to creditors, who might see proper to proceed averse to it, yet that this would not aid the Plaintiff, who, in availing himself of the garnishee process, impliedly affirmed, and ratified the conveyance of the Company to Sibley. The theory is plausible, but does not seem to be sustained by anything in our own Statute, or in any authorities to which we have had access.

We think it would be more correct to say, that the proceeding by attachment is *notwithstanding* the assignment or conveyance—the garnishee process is resorted to *because of it*. In the view taken by the Court of this transaction, the Company had not parted, and did not intend to part with its property in these bonds, further than as actually accepted by its creditors. There was no legal conveyance of the bonds to, or vesting of the title in the Respondent, and therefore the argument is not applicable to this case. The bonds still being the property of the Company, any creditor might proceed either by attachment or garnishment (according as he might show himself entitled by affidavit) to acquire possession of the bonds. Practically, however, in ordinary cases of this kind, the writ of attachment would be of no avail, from the impossibility of obtaining a manual delivery of the property. In this case the only effective remedy which the creditor had was by process of garnishment, at least, the only remedy until after judgment and return of an execution unsatisfied, when he might accomplish the same thing by proceeding supplementary to execution. These proceedings have usually, however, but little virtue, as they generally come too late to yield fruit. And herein the advantage of this process is most apparent, in enabling creditors at the very commencement of their suit against the principal debtor, to seize upon his property without warning, and thus obtain security, 'which would be far enough beyond their reach at the termination of the action.

But even though this resolution be viewed as an assignment, we see no obstacle in the way of the creditor, who chooses to adopt this method, rather than that by attachment, to reach the property. The Statute offers the creditor his choice of two remedies. If he can show by the garnishee that the latter *holds property* belonging to the principal debtor, the Statute gives the creditor the right to secure that property by judgment against the garnishee. And we fail to see that this right is in anywise affected by the manner in which the garnishee became possessed of the property of the debtor, whether by assignment or otherwise. Does the garnishee hold property of or owe the Defendant in the principal action? seems to be

the only question which it is necessary for the Court to consider, and according to answer, as shown by the disclosure, must be the judgment. When an assignment is declared void as to the creditors, or rather, when it is actually void as to them, they are at liberty to adopt any remedy which the Statute has provided, to secure their claims.

It was urged on the argument, that if the validity of an assignment may be tested in this manner, that the garnishee process would always be resorted to in cases of this kind, rather than the usual proceeding by attachment. If this were true, it furnishes no valid argument against this proceeding. Where the defect in the assignment appears on the face of the instrument, and the garnishee answers that he holds the property by virtue of the assignment, the matter would seem to be as fully before the Court, as if the same fact were set up by way of answer to a suit commenced by attachment, and may be as properly passed upon by the Court in one case as in the other. But in fact, it is not probable that the garnishee process would be often resorted to in these cases. The party seeking to avoid an assignment by the garnishee process, would take the answer of the garnishee at his own risk, and be bound by it. He would necessarily be more restricted in a full examination of all the facts, especially in the matter of introducing evidence, than in a suit commenced by attachment, or otherwise. And where the assignment is attacked on the ground of fraud in fact, there are probably few cases where a party would wish to rely on the evidence of the garnishee alone to prove the fraud. At all events, it seems that Courts have considered the validity of assignments, when brought before them under this process, and we find no authority holding that the practice is not correct. *Drake on Att.* 464, *Lamb vs. Stone;* 11 *Pick.* 527, *Cowles vs. Coe;* 21 *Conn.* 220, 6 *Pick* 474, 9 *Pick.* 435. And in cases of fraudulent assignments or conveyance of lands, where the garnishee has been discharged, no question seems to have been made as to the power of the Court on this process to examine as to the validity of the conveyance, but the garnishees were discharged on the ground that real estate

could not be the subject of garnishment.  *Howe vs. Field*, 5 *Mass.* 390 ; *Hunter vs. Case*, 20 *Ver.* 195.

From these considerations, we think it manifest, that where property is so situated, or of such a nature that it may be reached by attachment, or other process than that of garnishee, the latter will not ordinarily be resorted to.  In fact, the principal object of the garnishee process, seems to be, to reach precisely such cases as the one at bar, where none other can be made available.  *Drake on Attachments, Sec.* 451.  "Garnishment is an effectual attachment of the effects of the Defendant in the garnishee's hands, differing in no essential respect from attachment by levy, except as is said, that the Plaintiff does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value. "  *Do. Sec.* 453.  Nor is it true that the rights of third parties or creditors are more prejudiced by this proceeding than by process of attachment.  The parties defendant only are changed, the other creditors in neither case being joined.  If the Respondent claim the property, he is before the Court to interpose his title.  If the property belongs to the principal debtor, he can have no interest in making that fact appear, and if the property belonged to the creditors which were specified in the list, directed by the Company to be furnished to the Respondent, we know of no form of action in which they could claim a hearing, to any greater extent than in this.  There seems to be no dispute however, but that the disclosure of the garnishee has presented the facts in the case fully and truly, and in fact, the Court is probably as well advised of the rights of those creditors to the property in question, as it could be were they present in person, or by attorney.  This objection, therefore, does not require further consideration.  It may be added, however, to prevent misunderstanding, that the Court does not intend to decide in the views above expressed, that the rights of a creditor are concluded by the answer of a garnishee, nor to suggest the proper remedy when it is claimed such rights are prejudiced.

The only other point raised on the argument, which it is

necessary to examine is, whether these bonds are the subject of the garnishee process. Our statute is broad, and covers "property, money and effects." That these bonds were "property," in the ordinary signification of the term, we think cannot be doubted. That the Rail Road Company considered them as property, and valuable too, is evident from the fact that it proposed to turn them out in satisfaction of its debts, at ninety-five cents on the dollar. The definition of the word as given by lexicographers, is "the exclusive right of possessing, enjoying and disposing of a thing; ownership. The thing owned; that to which a person has the legal title, whether in his possession or not." Such, it is reasonable to presume, is the common understanding of the meaning of the word. In the construction of statutes it is provided (*Rev. Stat.*, *Chap.* 3, *Sec.* 1) that "all words and phrases shall be construed and understood, according to the common and approved usage of the language;" and in a word of such common use as the one in question, there can be no ground for claiming that the Legislature intended to use it in a technical sense, or give it the limited application which it was claimed on the argument it should receive. But aside from this, there is clear evidence in Chap. 80 that this process was intended to reach this species of property. Sec. 15 provides that "whenever the Garnishee shall pay or deliver to the officer having such execution, any property which may be sold on an execution by existing laws, the officer shall proceed to levy upon and sell the same at public auction or vendue, as in other cases; and if the Garnishee shall deliver to the officer any *notes, bills, bonds, or other choses in action,* the officer shall return the same to the Court, to be retained in his hands for the use of the Plaintiff," &c. Sec. 20 also declares bills of exchange and promissory notes to be "effects" under the provisions of the chapter, clearly showing that the intent was to make such instruments the subject of garnishment. In the New England States, where substantially the same remedy exists, under different names, there have been decisions holding that notes and choses in action were not the subject of the trustee process. (8 *Pick.* 298; 9 *Mass. R.* 537.) But their statutes will be found to be essentially different from

our own, and much more limited in terms, confining the process to goods, moneys and effects.   So also, by their statutes, is property that may be levied on by writ of execution more limited in kind than is subject to that process here.   *Sec.* 143, *p.* 552, *Rev. Stat.*, provides that the Sheriff must collect, and if necessary, in his name of office sue for the debts and credits attached; and *subdivision* 4 *of Sec.* 148, *p.* 553, provides that the " Sheriff may collect the notes, *other evidences of debt,* and debts that may have been attached," &c.   These Bonds are evidences of debt, and are clearly the subject of attachment, whenever the officer can find them so as to take them into his possession.   And there being nothing in the nature of the property itself which exempts it from process of execution or attachment, no valid reason can be given why it should not be reached by this process, which is in effect but another form of attachment, and intended to reach a class of cases in which the ordinary writ is of no avail.   In the same general sense has the Legislature made use of the term property elsewhere in the statute, as in provisions for taxation, and in defining its use in *Sec.* 18, *p.* 736, *Rev. Stat.,* on crimes and punishments.   In short, it is not credible that the Legislature intended to place the large amounts of property of this class that are held in every community, beyond the reach of creditors, and exempt it from payment of debts.   And yet, such would be the practical effect of giving the construction to the statute contended for by the Counsel for the Respondent.

The judgment of the Court below should be reversed, and the cause remanded to the Court below, with directions to enter judgment against Henry H. Sibley, the Garnishee, for the amount of the judgment of the Plaintiff in Error against the Minneapolis & Cedar Valley Railroad Company.