**G.S. RASMUSSEN & ASSOCIATES, INC., Plaintiff–Appellant,**

v.

**KALITTA FLYING SERVICE, INC.; Connie Kalitta Services, Inc.; Conrad A. Kalitta, Defendants–Appellees.**

No. 90–56010.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1991.

Decided March 9, 1992.

---

Michael W. Stamp, Joel Franklin, Stamp and Franklin, Pacific Grove, Cal., W. Montgomery Jones, Jones and Jones, Monterey, Cal., for plaintiff-appellant.

Robert H. Morse, Galland, Kharasch, Morse & Garfinkle, P.C., Washington, D.C.; C. Darryl Cordero, Weissburg & Aronson, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, Chief Judge, GOODWIN and KOZINSKI, Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge:

We shuttle back and forth between federal and state law in determining what legal protections—if any—are available to the holder of certain aircraft design permits issued by the Federal Aviation Administration.

### Facts

A. The FAA is charged by Congress with promoting air safety, see 49 U.S.C.App. § 1421(a), and pursues this mis-

sion vigorously and effectively in cooperation with the private aviation industry. One of the FAA's most important functions is to prescribe standards and to measure compliance with a multistep certification process for airplane design and production. See generally *United States v. Varig Airlines*, 467 U.S. 797, 804–07, 104 S.Ct. 2755, 2759–61, 81 L.Ed.2d 660 (1984).

Because the certification procedure is complex and expensive, the FAA certifies airplane types rather than individual planes. Aircraft manufacturers are required to test and analyze new airplane designs themselves; the FAA then determines the airworthiness of the design based on the manufacturer-generated engineering data and test results.[1] Once a manufacturer has demonstrated the safety of its design, the FAA issues it a Type Certificate. See 49 U.S.C.App. § 1423(a)(2); 14 CFR § 21.21(b). The manufacturer can then obtain a production certificate by proving to the FAA that each duplicate airplane will comply with the Type Certificate. See 49 U.S.C.App. § 1423(b); 14 CFR §§ 21.133–21.143. Finally, the manufacturer can obtain airworthiness certification for subsequent aircraft, without undergoing independent testing, by demonstrating that they conform to the Type Certificate. See 49 U.S.C.App. § 1423(c); 14 CFR § 21.183.

This case involves a closely related FAA certification scheme: Supplemental Type Certificates (STCs)—which, as the name implies, certify changes to planes already type-certificated. Anyone who wishes to make a major alteration to an airplane must obtain an STC. 14 CFR § 21.113. The STC serves the same function for alterations as the Type Certificate does for initial manufacture: It allows the FAA inspector to shortcut the airworthiness certification process by incorporating an approved design. STCs are obtained through the same arduous process as Type Certificates: The applicant must present engineering and test data sufficient to prove to the FAA the airworthiness of the proposed modification. See 14 CFR §§ 21.115–21.117.

B. George Rasmussen is an aeronautical engineer. He calculated safe airspeed parameters for DC–8 cargo planes carrying significantly more weight than they were designed for, and developed an aircraft modification that allows DC–8s to carry tens of thousands more pounds than permitted under their original Type Certificate. Based on hundreds of hours of engineering work, Rasmussen submitted volumes of technical data to the FAA. Having thus proved that it was safe for heavily loaded DC–8s to fly within his calculated speed range, he was granted an STC.[2]

For a DC–8 owner to obtain airworthiness certification to operate a plane with the increased cargo capacity, he must meet three requirements: First, he must modify the aircraft by installing three instruments—two airspeed indicators and a maximum speed warning gauge; second, the plane must carry a supplement to the flight manual instructing the pilot how to fly the heavily loaded plane safely; third, Rasmussen's STC must be shown to the FAA inspector so he can verify that the modifications conform to a design that has been approved by the FAA as airworthy. Without Rasmussen's STC, the plane owner would have to obtain his own STC by independently proving to the FAA that the modification was safe.

Kalitta owns and operates cargo aircraft. In 1985, it bought a used DC–8 passenger airplane. It proceeded to convert the plane to cargo use, a use that would be uneconomical without the modification described in Rasmussen's STC. Rasmussen offered to license the STC to Kalitta for $95,000, but Kalitta declined. Instead, in the dis-

---

**1.** The certification may be by FAA employees or by designated engineering representatives—private sector experts in the field. See 14 CFR § 183.29.

**2.** Rasmussen holds more than 20 STCs. For simplicity we will discuss only the particular DC–8 cargo capacity STC involved in this case. For the same reason, we will refer to the plaintiff as Rasmussen even though his STCs have at various times been held by different corporations under his control.

trict court's words, "Kalitta decided to 'pirate' the Rasmussen STC." Kalitta copied the supplemental flight manual from a Rasmussen STC-equipped DC-8 it already owned,[3] and obtained the three necessary instruments from sources other than Rasmussen. It installed them on the airplane and applied to the FAA for an airworthiness certificate; it typed the number of Rasmussen's STC on the appropriate line of the application, and included a photocopy of the certificate itself.[4] Kalitta's modification conformed with Rasmussen's validly issued STC. The FAA certified Kalitta's modified DC-8 as airworthy.

Taking the position that Kalitta was free-riding on his effort, Rasmussen sued for conversion of his STC and for unjust enrichment. The district court granted summary judgment for Kalitta, holding that Rasmussen had no protectable property interest in the STC and, in any event, that his action was preempted by the federal copyright and patent laws.[5]

## Discussion

### A. *Is There a Property Right?*

How property rights in new goods and services are established and defined is a question of considerable significance in a society, such as ours, where private ownership is the principal incentive for the creation and maintenance of commodities, and for their efficient allocation. The failure or inability to recognize private property

rights in certain types of goods often leads to a variety of adverse effects. One phenomenon, known as the tragedy of the commons, is the over-use of public goods because individual users do not suffer the full cost of their consumption. A related phenomenon is the free-rider problem, where third parties enjoy the benefits of a good without having invested the time, money and effort of creating it. While the tragedy of the commons results in the over-consumption of existing goods, the free-rider problem discourages the creation of new goods. In order to avoid such inefficiencies, the law generally favors the establishment of property rights. See, for example, *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918).

Giving innovators the exclusive right to reap the benefits of their efforts compensates them for the costs of innovation, the risk of failure and the potential liability that can arise if the product proves defective.[6] If successful entrepreneurs are denied such exclusive rights, they will be less likely to invest the necessary time, money and energy into innovation.[7] It is with these considerations in mind that we turn to the unusual facts before us.

Rasmussen's interest is of a most interesting and peculiar sort, one that may become more prevalent as we continue to witness the expansion of the regulatory state: It has value *only* because it helps

---

3. This plane and another owned by Kalitta are also involved in this action. See Discussion, section C.2 below.

4. It appears that the FAA does not require an original STC as part of the application process; indeed, because there is only a single original of any particular STC, airworthiness applications necessarily include only a copy of the certificate.

5. The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1294(1).

6. Rasmussen, for example, could be held liable for huge damage awards if a plane modified pursuant to his STC crashes. Cf. *Elsworth v. Beech Aircraft Corp.*, 37 Cal.3d 540, 208 Cal.

Rptr. 874, 691 P.2d 630 (1984) (affirming damages award against airplane manufacturer despite FAA approval under Type Certificate), cert. denied, 471 U.S. 1110, 105 S.Ct. 2345, 85 L.Ed.2d 861 (1985). This type of risk can be a substantial barrier to the production of new and useful products. See Peter W. Huber, *Liability: The Legal Revolution and its Consequences* 153–71 (1988).

7. Of course, giving incentives to creative talent is not the only important consideration in determining the existence and extent of a property interest. Thus, granting patent rights for infinite duration might well result in an immediate *increase* in inventions, but would doubtless also impoverish the body of shared knowledge from which future inventors must draw in creating useful products in the future. The patent laws therefore grant protection for only a limited time. See 35 U.S.C. § 154 (seventeen years).

secure a government privilege to do something that would otherwise be forbidden. The time, money and effort Rasmussen devoted to obtaining his STC would largely be wasted but for the fact that they generated the data necessary to satisfy the requirements of the Federal Aviation Act and the Code of Federal Regulations.

Under the applicable FAA regulations, an STC is granted upon the presentation of certain documentation, which normally can be obtained only through expensive and time-consuming design, experimentation and testing. 14 CFR §§ 21.115–21.117. Moreover, an STC is issued to a particular individual and entitles the holder to specific privileges. Id § 21.119. The STC is transferable and it may be licensed, in accordance with FAA procedures. Id § 21.47.[8]

That this enumeration of rights and privileges is insufficient, of itself, to establish property rights is clear from the facts of this case: Kalitta had no trouble obtaining the airworthiness certificate by filling in the number of Rasmussen's STC and providing a photocopy thereof.[9] Whatever rights the regulations may provide, therefore, are not self-executing, and it is unclear whether Rasmussen could have challenged the FAA's action in issuing the airworthiness certificate to Kalitta.[10]

There are many reasons why a federal agency would choose not to police property rights that might be created incidental to its regulatory scheme. Here, for example, the purpose of the federal aviation statutes and regulations is to assure air safety. *Varig Airlines,* 467 U.S. at 804–05, 104 S.Ct. at 2759–60. The FAA may well have contemplated that holders of STCs would have the exclusive right to obtain airworthiness certificates, but the agency may deem it too burdensome to keep track of the hundreds, perhaps thousands, of STCs outstanding; it may lack the facilities and the expertise to adjudicate questions of joint ownership, transfer, license and the multitude of other issues that routinely arise when property rights are involved. The FAA may have decided it could best pursue its mission by granting airworthiness certificates to whoever can show compliance with a validly issued STC, leaving questions of property law to the courts. Cf. Wall St. J. B7 (Jan. 23, 1992) (discussing trademark dispute between two airlines, in federal court "because [in 1988] the Department of Transportation discontinued its decades-old practice of settling airline name disputes").

■ Rasmussen argues that even if the regulatory agency is unwilling or unable to enforce his rights, federal law can nevertheless provide an enforcement mechanism by recognizing an implied right of action under the federal aviation regulations. Pursuant to the four-part test articulated

---

**8.** The district court concluded that STCs are not transferable because section 21.47 refers only to Type Certificates. Rasmussen's STC states on its face, however, that it can be transferred "in accordance with" the Type Certificate regulation. CR 48 exhibit Q. Furthermore, the second page of the STC is titled "transfer endorsement" and states that when completed and returned "the FAA will reissue the certificate in the name of the transferee and forward it to him." Id. The parties do not dispute that STCs are transferable.

**9.** Why this is so is a mystery. A straightforward reading of the regulations would suggest that only a holder of an STC is entitled to an airworthiness certificate. See 14 CFR § 21.119(a). Kalitta did not hold the certificate either originally or as a transferee or licensee. Because the FAA did not participate in this case as a party or amicus, we have no authoritative way of determining whether issuance of the airworthiness certificate to Kalitta was a mistake, or whether the privilege granted by section 21.119 is narrower than it appears.

**10.** Rasmussen might have been entitled to bring an APA action challenging the issuance of the STC, had he acted in a timely fashion. See *Oregon Environmental Council v. Kunzman,* 714 F.2d 901, 903 n. 2 (9th Cir.1983). We need not decide this issue because Rasmussen's failure to bring such an action is no bar to his bringing the current action under state law. The APA action would, in effect, be seeking to cancel what Rasmussen claims is an infringement of his exclusive privilege granted by the FAA regulations. The current action seeks a different remedy: compensation for the benefit bestowed upon Kalitta by use of the right Rasmussen claims was granted exclusively to him. Rasmussen was entitled to choose which of these remedies to pursue. See *Koratron Co. v. Deering Milliken Inc.,* 418 F.2d 1314, 1317–18 (9th Cir.1969), cert. denied, 398 U.S. 909, 90 S.Ct. 1692, 26 L.Ed.2d 68 (1970).

in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), we have previously held that there is no implied private right of action under the Federal Aviation Act. See *Montgomery v. American Airlines, Inc.*, 637 F.2d 607, 609–10 (9th Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). We reach the same conclusion here, particularly where plaintiff's claim is grounded in the regulations rather than the statute itself: Two of the *Cort* factors turn on the furtherance or hindrance of congressional objectives—an amorphous consideration that becomes even more attenuated when applied to regulations.

Because federal law plays a significant role in defining the right but provides no mechanism of private enforcement, we must turn to state law in determining whether Rasmussen's interest amounts to a property right. Cf. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."). The parties agree that the appropriate state law is that of California, which defines property very broadly: "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others.... [T]he thing of which there may be ownership is called property." Cal.Civil Code § 654. This somewhat tautological definition leaves unanswered the key question: How does one determine whether someone is entitled to exclusive use or possession of the thing in question?

Another provision of California law, giving examples of intangible property interests, is more helpful. The list includes the following: "[T]he composition of an author, the good-will of a business, trade-marks and signs, and ... rights created or granted by statute." Id. § 655. Also helpful

are decisions of the California courts determining whether various interests amount to property. A state liquor license, for example, is property under California law. *Golden v. State*, 133 Cal.App.2d 640, 643–45, 285 P.2d 49 (1955). The *Golden* court found dispositive that the license was issued to a specific person and was transferable from one person to another. It is thus relevant that the STC involved in this case states on its face that "This certificate [is] issued to G.S. Rasmussen" and that "This certificate may be transferred." See also *Yuba River Power Co. v. Nevada Irrigation Dist.*, 207 Cal. 521, 523, 279 P. 128 (1929) ("the term 'property' is sufficiently comprehensive to include ... everything which one person can own and transfer to another").

That the interest in question is limited to obtaining a governmental privilege, and a federal one at that, does nothing to diminish its status as a property interest for purposes of state law. As the California Supreme Court has stated, "[a]lthough a ... license is merely a privilege so far as the relations between the licensee and the state are concerned, *it is property in any relationship between the licensee and third persons,* because the license has value and may be sold." *Roehm v. County of Orange*, 32 Cal.2d 280, 282–83, 196 P.2d 550 (1948) (emphasis added).[11] The interest need not be one that was considered property at common law and, of course, need not be tangible. *City of Oakland v. Oakland Raiders*, 32 Cal.3d 60, 183 Cal.Rptr. 673, 646 P.2d 835 (1982) (property right in professional football franchise); see also *Terrace Water Co. v. San Antonio Light and Power Co.*, 1 Cal.App. 511, 513, 82 P. 562 (1905) (electricity); *Johnston v. Twentieth Century–Fox Film Corp.*, 82 Cal. App.2d 796, 807–13, 187 P.2d 474 (1947) (book title).

To the extent we can distill a principle on the basis of this somewhat amor-

---

**11.** The FAA might decide to alter or revoke the exclusivity of STCs; we express no view on whether such a regulatory action by the licensing body could constitute a taking requiring just compensation. See *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1004–14, 104 S.Ct. 2862, 2873–

78, 81 L.Ed.2d 815 (1984). The distinction drawn in *Roehm* between rights vis-a-vis private parties and rights vis-a-vis the governmental entity that gave rise to the right may well be dispositive of this issue.

phous body of law, three criteria must be met before the law will recognize a property right: First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control;[12] and third, the putative owner must have established a legitimate claim to exclusivity.[13] The interest Rasmussen asserts here easily meets these criteria.

■ The nature and extent of the rights afforded by an STC are capable of precise definition: It enables an airplane owner to obtain an airworthiness certificate for a particular design modification without the delay, burden and expense of proving to the FAA that a plane so modified will be safe. Federal law also limits the interest in a significant way: The rights created by an STC are only applicable to airplanes within the safety jurisdiction of the FAA—"civil aircraft in air commerce." 49 U.S.C.App. § 1421(a). Thus, Kalitta is free to make Rasmussen's modification on airplanes it flies entirely outside the United States. Id § 1301(23) (defining "air commerce").

Nor are there any conceptual or practical difficulties in restricting the right to the holder of the STC, or to someone who is a transferee or licensee. In fact, the federal regulations contemplate exactly that. Rasmussen's interest is thus precisely defined and capable of exclusive possession.

The final requirement—that Rasmussen have established a legitimate claim to exclusivity—is also amply met here. Rasmussen expended considerable time and effort in research and design; he conducted the appropriate tests and compiled the necessary data; he prepared an operations manual and lined up an instrument manufacturer; he convinced the FAA that the modification is safe; and he obtained a certificate which results in preferential rights in the issuance of airworthiness certificates by the FAA. Without Rasmussen's efforts, the STC Kalitta relied on simply would not exist. Rasmussen has the type of reasonable investment-backed expectations that give rise to a legitimate claim of exclusive control over the STC.

We therefore hold that Rasmussen has a property interest in his STC under California law,[14] unless such an interest conflicts with federal law. We turn to that question now.

## B. *Preemption*

■ Federal preemption takes three basic forms, all of which must be considered in this case. First, Congress may explicitly preempt state law; second, a federal scheme may occupy a given field and thus preempt state law in that field; and third, when compliance with both state and federal law is impossible the conflicting state law is preempted. See *California v. ARC America Corp.*, 490 U.S. 93, 100–01, 109 S.Ct. 1661, 1664–65, 104 L.Ed.2d 86 (1989). Whatever the form, the key is whether the operation of state law " 'stands as an ob-

---

**12.** As the saying goes, some of the best things in life are free, and the reason may be that they cannot be reduced to possession: The air we breathe, scenic views, the night sky, the theory of relativity and the friendship of others cannot be reduced to possession and therefore cannot be the basis of property rights.

**13.** Opinions defining property for takings purposes often use the phrase "reasonable investment-backed expectations" to describe such claims. See, for example, *Monsanto*, 467 U.S. at 1005, 104 S.Ct. at 2874; *Long Beach Equities, Inc. v. County of Ventura*, 231 Cal.App.3d 1016, 1038, 282 Cal.Rptr. 877 (1991). The phrase aptly describes the nature of the interest needed to establish property rights for purposes of California law. The degree of investment—monetary or otherwise—is relevant, especially when dealing with intangibles, in determining whether the

purported owner has developed a stake in the thing sufficient to warrant invoking the protections of the law of property.

**14.** The district court's unwillingness to recognize a property interest here because it could not fit it into an intellectual property pigeonhole elevates nomenclature over substance. While we occasionally find it useful to refer to certain types of property as real, personal, intellectual or intangible, these labels have little substantive significance in determining whether a property right exists. The key question is not whether we can find a category of property into which the right fits, but whether there is any reason, in public policy or otherwise, we should deny a party the full benefit of its efforts where exclusive rights are reasonably easy to define and protect. Defendant has pointed to no such reason and we can think of none.

stacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

### 1. Copyright Law Preemption

■ Copyright preemption is both explicit and broad: 17 U.S.C. § 301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act. The drawings and plans involved in implementing the STC, and the flight manual supplement, are subject to copyright. 17 U.S.C. § 102(a). Thus, copyright provides the sole remedy for their unsanctioned duplication. See *Avco Corp. v. Precision Air Parts, Inc.*, 210 USPQ 894, 897 (M.D.Ala.1980), affirmed, 676 F.2d 494 (11th Cir.), cert. denied, 459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). And the STC certificate is a government form as to which no protection from copying exists. 17 U.S.C. § 105; see *Building Officials & Code Adm. v. Code Technology, Inc.*, 628 F.2d 730, 735 (1st Cir.1980). Were Rasmussen claiming an exclusive right to copy the manual, the drawings and plans or the STC itself, his claim would surely be preempted by the Copyright Act.

Rasmussen claims a much different interest, however: The right to *use* the STC as a basis for obtaining an airworthiness certificate for an airplane that is modified in a particular way. Rasmussen thus complains not about the actual copying of the documents, but of their use as a shortcut in obtaining a valuable government privilege—the right to modify an airplane in a particular way without going to the trouble and expense of proving that the modification meets FAA standards.

■ Federal copyright law governs only copying. See 17 U.S.C. § 106. We have held that "[s]ection 301(a) [of the Copyright Act] preempts a state-created right if that right may be abridged by an act which, in and of itself, would infringe one of the exclusive rights listed in § 106. But if violation of the state right is predi-cated upon an act incorporating elements beyond mere reproduction or the like, there is no preemption." *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir.1984) (internal quotations, brackets and citations omitted). Enforcement of Rasmussen's property right in his STC leaves Kalitta free to make as many copies of the certificate as it wishes; to the extent the manual supplement is not protected by the copyright laws, the same is true of it. That Kalitta is prevented from then using these copies to obtain an airworthiness certificate from the FAA does not interfere in any way with the operation of the copyright laws.

### 2. Patent Law Preemption

■ A somewhat closer issue is presented with respect to patent law, which establishes a zone of preemption broader than that of copyright law: Even if Congress has left an area unprotected, the fact that patent law *could* reach it preempts state-law protection. See *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230–32, 84 S.Ct. 784, 788–89, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 237–38, 84 S.Ct. 779, 781–82, 11 L.Ed.2d 669 (1964). Congress has balanced innovation incentives against promoting free competition, and state laws upsetting that balance are preempted. Thus, a machine or process that does not satisfy the requirements of federal patent law—non-obviousness and the like—cannot be protected under either federal or state law. For this reason, the instruments required to modify the plane in accordance with the STC, and the entire modification process, must be protected by patent law or not at all. See *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156–57, 109 S.Ct. 971, 980–81, 103 L.Ed.2d 118 (1989).

The supremacy clause does not require full congruence between federal and state intellectual property protections, however. See *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) (federal copyright law does not preempt state copyright law providing greater protection); *Kewanee Oil*, 416 U.S. 470, 94 S.Ct.

1879 (federal patent law does not preempt state trade secret law protecting unpatentable processes). The Supreme Court has summarized its preemption approach as follows: "States may not offer *patent-like protection* to intellectual creations which would otherwise remain unprotected as a matter of federal law." *Bonito Boats,* 489 U.S. at 156, 109 S.Ct. at 980 (emphasis added). In that case, the Court struck down a state statute that prohibited copying boat hull designs: "[T]he Florida statute allows petitioner to [ ]assert a substantial property right *in the idea,* thereby constricting the spectrum of useful public knowledge." Id at 159, 109 S.Ct. at 982 (emphasis added).

■ The right involved here, however, is not "patent-like" at all. Rasmussen claims no exclusive right to modify DC–8s as described in his STC. Kalitta or anyone else may perform the necessary studies and obtain an STC from the FAA—even if the modification so certified is identical to Rasmussen's. See *Doyn Aircraft, Inc. v. Wylie,* 443 F.2d 579, 580 n. 1 (10th Cir. 1971) ("[STCs] do not ... grant exclusive rights since any number of people can acquire an STC for the same type of modification.").

In *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), the Court held that a state contract law enforcing a royalty agreement for an unpatentable invention was not preempted. The Court reviewed the purposes of the patent system: to foster and reward invention, stimulate further innovation and ensure free use of ideas in the public domain. Because the contract involved did not conflict with any of these goals, its enforcement was not preempted by federal patent law. Protecting property rights in STCs is similarly consistent with these objectives: Rasmussen can collect the fruits of his research, which provides both specific and general incentives to innovate, while his modifications will stimulate further innovation; at the same time, no information in the public domain is denied free circulation. The STC itself discloses the results of Rasmussen's testing and experimentation in coming up with the optimal combination of weight and speed; Kalitta need perform only those tests and studies that establish the safety of Rasmussen's modification to obtain its own STC.

Granting Rasmussen a property right in his STC will serve many of the same purposes of the patent laws, because it will promote innovation in the field of aeronautics. But, as the Supreme Court has said, "[c]ertainly the patent policy of encouraging invention is not disturbed by the existence of another form of incentive to invention." *Kewanee Oil,* 416 U.S. at 484, 94 S.Ct. at 1887. There is no patent law preemption.

### 3. Federal Aviation Act Preemption

■ Finally, we must consider whether recognizing a property right in STCs would impermissibly conflict with the federal aviation regulatory scheme. At the outset, neither the Federal Aviation Act nor its accompanying regulations explicitly preclude recognition of a property right in STCs. The statute does contain a provision which preempts state law "relating to rates, routes, or services," 49 U.S.C.App. § 1305, but this provision is inapplicable to the question before us.

Nor do any of the substantive provisions create a conflict, as was the case in *In re Holiday Airlines, Inc.,* 620 F.2d 731 (9th Cir.), cert. denied, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980). In *Holiday Airlines,* we held that the statutory federal recording system for aircraft liens preempts state recording requirements; the decision was based largely on "[t]he predominant purpose of the statute," which was "to provide one central place for the filing of such liens...." Id. at 735. Allowing individual state recording requirements to control would have impermissibly conflicted with this goal of uniformity. See *In re Peregrine Entertainment, Ltd.,* 116 B.R. 194, 200–01 (C.D.Cal.1990).

Here, by contrast, the purpose of the statute and regulations governing STCs is "to promote the safety of flight of civil aircraft in air commerce by establishing minimum standards for aircraft design, ma-

terials, workmanship, construction, and performance." *Varig Airlines,* 467 U.S. at 804, 104 S.Ct. at 2760 (citing 49 U.S.C.App. § 1421). Recognizing a property right in STCs would not conflict with this guiding purpose. In fact, to the extent innovators like Rasmussen retain control over the certificated modifications, safety will likely be enhanced: The Supreme Court has noted that "the duty to ensure that an aircraft conforms to FAA safety regulations lies with the *manufacturer and operator,*" id. at 816, 104 S.Ct. at 2766 (emphasis added), but Rasmussen can hardly monitor compliance if he does not know who has run off a copy of his STC on an office copier and used it to obtain airworthiness certification for an unsafe modification. Recognizing Rasmussen's property interest enables him to maintain closer control over the alteration process, and to notify licensees of problems or improvements in the modification.

We note also that without the exclusive right to capture the benefits of the time, money and expertise invested in obtaining an STC, entrepreneurs like Rasmussen will be less likely to devote their resources and energies toward aeronautical innovation. Many modifications undoubtedly increase safety or otherwise benefit the field of aviation; because recognizing a property right in STCs encourages such developments, the purposes of the federal scheme are actually advanced.

Furthermore, "when Congress legislates in a field traditionally occupied by the states, such as common law tort and contract remedies in business relationships, there is a presumption against finding preemption of state law." *West v. Northwest Airlines, Inc.,* 923 F.2d 657, 659 (9th Cir. 1990) (citing *ARC America Corp.,* 490 U.S. at 100–01, 109 S.Ct. at 1665). We held in *West* that the Federal Aviation Act did not preempt a state-law claim when compliance with state law did not conflict with the federal regulations. Id. at 661; see also *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 299–300, 96 S.Ct. 1978, 1984–85, 48 L.Ed.2d 643 (1976).

We reach the same conclusion here. The relevant regulations confer exclusive privileges on the holder of an STC, and provide for transfer and licensing. See 14 CFR §§ 21.119, 21.47. Where federal regulations contemplate the same type of right sought to be enforced under state law, we are all the more reluctant to find preemption. See *West,* 923 F.2d at 661 & n. 1. Compliance with both the federal regulations and state property law would place no one "in an untenable position when the agency and a court disagreed. . . ." *Nader,* 426 U.S. at 299, 96 S.Ct. at 1984–85. Recognizing a property right in STCs would not frustrate the Federal Aviation Act or the regulations promulgated thereunder.

\* \* \*

Because STCs are beyond the scope of copyright, because their protection does not upset the balance established by Congress in the patent scheme, and because recognizing a property right in STCs does not conflict with the aviation statutes or regulations, we hold that Rasmussen's state-law actions are not preempted by federal law.

## C. *State–Law Claims*

### 1. The Pirated STC

In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages. *Tyrone Pacific Int'l, Inc. v. MV Eurychili,* 658 F.2d 664, 666 (9th Cir.1981). Our earlier discussion establishes the first element: Rasmussen has an ownership interest in the use of his STC, which is property under California law. The second requirement is also satisfied: Kalitta photocopied the certificate, presented it to the FAA, and thereby obtained a valuable benefit as a consequence of using Rasmussen's STC without authorization or permission. Rasmussen has also suffered damages by being denied a return on his investment as a condition for granting Kalitta the right to use his STC. Thus, under California law, Kalitta tortiously converted Rasmussen's STC when it used the STC to obtain airworthi-

ness certification for the modified DC–8.[15] See *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 726 (9th Cir.1984) (affirming judgment for conversion of intangible rights under California law); *A & M Records, Inc. v. Heilman*, 75 Cal.App.3d 554, 570, 142 Cal.Rptr. 390 (1977) ("misappropriation and sale of the intangible property of another without authority from the owner is conversion"), cert. denied, 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978).

■■■■ Rasmussen also alleges that Kalitta has been unjustly enriched. Under California law, a contract will be implied when one party has something which "in equity and good conscience" it ought not. *Philpott v. Superior Court*, 1 Cal.2d 512, 522, 36 P.2d 635 (1934) (quoting 3 Page on Contracts § 1473) (internal quotations omitted). Kalitta has materially benefited from the pirated STC: Its DC–8 can now carry substantially more cargo, and the parties agree that use as a cargo plane would be economically infeasible without the modification. Conversely, Kalitta has been spared the delay and expense it would have had to incur in obtaining its own STC. This benefit is due solely to Rasmussen's STC, for which Kalitta has paid nothing. Confronted with such facts, the California courts would imply a contract between Rasmussen and Kalitta. On remand, the district court shall fix its terms based on further evidence.

### 2. The Other Planes

In addition to the converted DC–8 with the pirated STC, Kalitta owns two other planes that had been modified with Rasmussen STCs by their prior owners.

One, a DC–8–21 freighter, was previously owned by Jet Way, to which Rasmussen had licensed an STC. The Jet Way contract is a "license agreement" to install a Rasmussen STC upon payment of $25,000 plus $200 per month, and under which Jet Way agreed to maintain $10,000,000 of accident insurance on Rasmussen's behalf. Kalitta purchased Jet Way's assets, including the DC–8–21; Rasmussen asked Kalitta for monthly payments in accordance with the license, but Kalitta claimed it bought the plane "unencumbered."

The other, a DC–8–51 freighter, was previously owned by Lockheed, to which Rasmussen had licensed an STC. Lockheed sold the plane to Maldives, which in turn sold it to Kalitta. Kalitta claims no knowledge of the license agreement between Rasmussen and Lockheed, which is styled a "purchase agreement" whereby Lockheed is granted an "irrevocable license" to use the STC for the operating life of the aircraft. This license, for which Lockheed paid $58,000, also requires the licensee to maintain $10,000,000 of accident insurance on Rasmussen's behalf.

Both contracts provide that all rights under them are transferable and assignable, and that all obligations are binding on successors; both identify specifically the airplanes to which they apply. Whatever rights Rasmussen has against Kalitta must be in the latter's capacity as an assignee or third-party beneficiary of the license agreements:[16] As to these two planes, Kalitta has not infringed Rasmussen's property right in his STC, because it did not use the STC to obtain airworthiness certificates from the FAA.

Any contracts between the original licensees and Kalitta, however, do not appear in the record. Furthermore, Rasmussen sued only for conversion and unjust enrichment—not breach of contract. We therefore leave resolution of the claims relating to these two planes, if any, to the district court on remand.

**15.** Kalitta concedes that if it had "entered Rasmussen's premises" and taken the STC documents, then it would have converted them and, furthermore, there would be no preemption. Appellee's Brief at 34 & n. 19. We fail to see any legal distinction between Kalitta's hypothetical and the facts before us: Kalitta's use of the photocopied STC deprived Rasmussen of his property right as surely as if Kalitta had purloined the original STC from Rasmussen's desk drawer and presented it to the FAA. The property right is in the *use* of the STC to obtain a governmental privilege, not in the physical possession of the STC form.

**16.** Rasmussen might also have an action against the original licensees.

### Conclusion

The use of an STC to obtain a governmental privilege is a property right under California law, and the protection of that property interest is not preempted by federal law; Rasmussen has stated valid claims for conversion and unjust enrichment.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.