STATE OF MINNESOTA

IN SUPREME COURT

A14-1121

Court of Appeals                                                      Dietzen, J.
                                        Took no part, Hudson, Chutich, JJ.

Sprinkler Warehouse, Inc.,

            Respondent,

vs.                                                           Filed:  March 23, 2016
                                                   Office of Appellate Courts
Systematic Rain, Inc., d/b/a GPLAWN.com, et al.,

            Appellants.

_____

Clarence J. Kuhn, Kuhn Law Firm, PLLC, Edina, Minnesota, for respondent.

Bryan R. Battina, William K. Forbes, Trepanier MacGillis Battina, PA, Minneapolis, Minnesota, for appellants.

_____

S Y L L A B U S

A domain name constitutes intangible personal property within the meaning of Minn. Stat. § 571.73, subd. 3(3) (2014) and is therefore subject to attachment by garnishment.

Affirmed.

OPINION

DIETZEN, Justice.

Sprinkler Warehouse, Inc. (Sprinkler) obtained a money judgment against Systematic Rain, Inc. (Systematic) in California, and docketed the judgment in Scott County, Minnesota. Sprinkler served a garnishment summons on Systematic and sought to attach Systematic's domain name, GPLAWN.COM, and the content of the associated website. After a hearing, the district court determined that the domain name and the associated website are not property subject to garnishment under Minn. Stat. § 571.73, subd. 3 (2014). The court of appeals reversed, concluding that the domain name and website are attachable under the statute. We granted review on the question of whether a domain name is property subject to attachment by garnishment under the statute.[1] Because we conclude that a domain name is intangible personal property subject to garnishment under Minn. Stat. § 571.73, subd. 3, we affirm and remand to the district court for further proceedings.

I.

Prior to its dissolution in April 2014, Systematic was a Minnesota corporation located in Shakopee and engaged in the business of lawn care contracting and sprinkler parts sales. James R. Palm (Palm) was the chief executive officer of Systematic. Systematic operated a website under the domain name GPLAWN.COM, which is

[1] Systematic did not petition for review of the court of appeals' conclusions with respect to websites, and thus questions regarding the status of the website are not before us.

2

registered to Palm. Through the website, customers could browse Systematic's products and then make purchases online or by directly contacting Systematic.

Sprinkler is located in Houston, Texas, and operates an online sprinkler parts distribution business. Sprinkler brought an action against Systematic for copyright infringement in 2012. In its complaint, Sprinkler alleged that Systematic infringed upon copyright-protected material on Sprinkler's website. In October 2012, a federal district court in California entered a default judgment of $156,000 against Systematic. On February 12, 2013, the judgment against Systematic was filed and docketed in Scott County District Court.

Thereafter, Sprinkler pursued collection efforts to satisfy the judgment. In January 2014, both Systematic and Palm were served with a garnishment summons that required disclosure of money or property they had that could be used to satisfy the judgment against Systematic. Palm submitted a garnishment disclosure form declaring he did not owe Systematic any money and did not possess any of its property. With respect to the domain name GPLAWN.COM, which was registered to Palm and used by Systematic in its business, Systematic took the position that neither the domain name nor the corresponding website was "property" subject to attachment by garnishment.

Sprinkler filed a notice of objection to Palm's and Systematic's claim that domain names and website content are not subject to garnishment. At the hearing, Sprinkler argued that Palm was the owner of Systematic, and that Systematic was the owner of the website entitled "GPLAWN.COM." According to Sprinkler, Palm should have disclosed the existence of GPLAWN.COM because the domain name and its corresponding

website constitute property of Systematic that are subject to garnishment under Minn. Stat. § 571.73 (2014). After the hearing, the district court issued an order concluding that neither a domain name nor its related website constitute property under the garnishment statute.

The court of appeals reversed, concluding that a domain name and its associated website are property subject to garnishment under Minn. Stat. § 571.73, subd. 3. *See Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*, 859 N.W.2d 527, 532-35 (Minn. App. 2015). We granted review.

II.

Systematic argues that domain names are not subject to garnishment under Minn. Stat. § 571.73 because the contractual right to use the alphanumeric designation that comprises a domain name cannot exist apart from the contract for services performed by a domain name registrar. According to Systematic, a domain name is a contract for services and not a form of property.

Statutory interpretation is a question of law that we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2014). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). We read the statute as a whole and give effect to all its provisions. *Id.* If the statutory language is free from ambiguity, we must apply the plain meaning of the statute and not explore the spirit or purpose of the law. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010). But if the

4

statutory language is not free from ambiguity we may look beyond the language of the statute to ascertain the Legislature's intent. *Id.*

Systematic concedes that the domain name was used by Systematic in its business and was registered to Palm, and that the sole issue before the court is whether a domain name is attachable by garnishment under Minn. Stat. § 571.73, subd. 3. Thus, there is no question as to the ownership or possession of GPLAWN.COM before this court.[2]

To answer the question presented, we will describe domain names, interpret the meaning of "property" in Minn. Stat. § 571.73, and then determine whether a domain name constitutes "property" under the statute.

A.

Generally, a domain name allows an Internet user to navigate to a specific location on the Internet, which corresponds to a unique, numeric Internet protocol (IP) address. Internet Corporation for Assigned Names and Numbers (ICANN), *Beginner's Guide to Domain Names* 3-4 (2010), https://www.icann.org/en/system/files/files/domain-names-beginners-guide-06dec10-en.pdf.[3] An IP address contains the actual information that a computer uses to locate specific websites, and each IP address then corresponds to a

---

[2]   The district court expressed doubt as to whether Sprinkler served the correct party to garnish the domain name on the ground that Palm did not own, possess, or control the domain name. Because this issue was not argued or raised below, it is not necessary for us to reach it, and we decline to do so.

[3]   ICANN is the nonprofit organization responsible for coordinating the maintenance of databases related to domain names and IP addresses, thereby providing for the Internet's stable operation. ICANN also accredits domain name registrars. For further information, *see What Does ICANN Do?*, ICANN (last visited on Jan. 4, 2016) https://www.icann.org/resources/pages/what-2012-02-25-en.

specific server that stores the information to be displayed on a website. *Id.* The translation from domain name to IP address is accomplished via the Domain Name System (DNS). *Id.* Thus, when an Internet user enters a domain name into an Internet browser, the information is used to locate an IP address, to which the user's computer then connects, allowing access to the website associated with the IP address.[4] A domain name can remain unchanged even if a website's content is moved to a different host server because the DNS can be instructed to point the existing domain name to a new IP address. *Id.* This is in some ways analogous to a business moving its physical location: its name stays the same, even though its street address might change.

In effect, a domain name is the publicly useable address of a computer network connection. A website's full address is called its "uniform resource locator" (URL). URLs are composed of (1) a transfer protocol (commonly "http://"), and (2) a domain name. The "top level" of a domain name is made up of those characters that follow its last "dot," including .gov, .com, .edu, .org, etc. *Id.* The "second level" precedes the "top level" in a domain's web address, and acts as a website's individual identifier. *Id.* For example, the top level of "google.com" is ".com," and the second level is "google." When the top level and second level are combined together, a domain name is unique and exclusionary. *Id.* The uniqueness of domain names allows for predictability in the use of

---

[4]     The DNS thus provides relatively easy-to-remember alphanumeric addresses for accessing otherwise unwieldy numeric addresses. For example, one can remember "www.icann.org" more readily than its corresponding IP address, "192.0.34.163."

the Internet because a single, complete domain name directs a person to a single IP address.

To obtain the right to use a domain name one must register it with an ICANN-accredited registrar. *Id.* at 5. The registration process involves a contract between the registrar and the individual (or other entity) that "sets forth the terms under which [] registration is accepted and will be maintained." *Id.* at 6. The party registering a domain name pays for services that include, at a minimum, linking the newly registered domain to its corresponding IP address. *Id.* Additional services such as e-mail and website hosting can be purchased as well. *Id.* at 7.

Because ownership of a domain name is subject to the terms of a contract, and because the registration is for a fixed term, the right to use a given domain name can end involuntarily. For example, if a registrant violates its contractual obligations, the registration can be terminated. *Id.* at 8-9. Also, renewal of a domain name is not automatic, and failure to renew may result in a termination of rights. *See id.* at 9-10. A registrant may freely transfer a domain name between registrars so long as more than 60 days have passed since it was registered or previously transferred (though other restrictions in ICANN's Inter-Registrar Transfer Policy may also apply). *Id.* at 10. Additionally, registrars are allowed to develop their own transfer procedures and deadlines so long as they are clear, concise, and meet certain ICANN contractual requirements. *Id.* at 11.

A website's domain name is the primary means by which consumers can access a website's content, and there is a premium placed on names that are distinctive and/or

7

easier to remember. Generally, domain names are available on a first-come, first-served basis. *Id.* at 6. But if a desired domain name is already registered, a party may be able to purchase the rights to it from the existing registrant. *Id.* at 4. Some registrars and other companies actively facilitate the resale of domain names. *Id.* This secondary market for domain names has become quite profitable, with single domain names selling for millions of dollars.[5]

B.

Minnesota Statutes § 571.73 sets forth the circumstances under which property is attachable by garnishment. Subdivision 3(3), which applies to personal property, provides that a garnishment summons attaches

> all other nonexempt intangible or tangible personal property of the debtor in the possession or under the control of the garnishee at the time of service of the garnishment summons, including property of any kind due from or in the hands of an executor, administrator, personal representative, receiver, or trustee, and all written evidences of indebtedness whether or not negotiable or not yet underdue or overdue . . . .

Minn. Stat. § 571.73, subd. 3(3).

Subdivision 3(3) has two important limitations. First, it does not apply to personal property that is exempt under Minn. Stat. §§ 550.37 and 571.922 (2014). Neither of the statutory exemptions applies to the domain name in this case; therefore, if the domain name is property at all, it is nonexempt property under the statute. Second, subdivision 3(3) applies only to property that is "in the possession or under the control of the

---

[5]    *See* Alyson Shontell, *Million-Dollar URLs: The Most Expensive Domain Names of All Time*, Business Insider (Jul. 22, 2014, 4:08PM), http://www.businessinsider.com/most-expensive-domain-names-2014-7?op=1.

garnishee at the time of service of the garnishment summons." Minn. Stat. § 571.73, subd. 3(3). There is no dispute for the purpose of this appeal that the domain name meets this condition as well.

The crux of the dispute therefore turns on the plain and ordinary meaning of the phrase "intangible or tangible personal property" in the statute. Generally, personal property means any movable or intangible thing that is subject to ownership, not classified as real property, and capable of being possessed or owned. *See Webster's Third New International Dictionary of the English Language* 1687 (2002); *Black's Law Dictionary* 1412 (10th ed. 2014). Intangible personal property refers to property that has no physical existence, and whose value lies chiefly in what it represents. *See Webster's Third New International Dictionary of the English Language* 1173 (2002); *Black's Law Dictionary* 1411 (10th ed. 2014). Examples include corporate stocks, bonds, money in an account, and the goodwill of a business.

Notably, Minn. Stat. § 571.73, subd. 4, sets forth specific exceptions to the types of property that are subject to attachment by garnishment.[6] When a statute designates

---

[6] Those exceptions are:

(1) any indebtedness, money, or other property due to the debtor, unless at the time of the garnishment summons the same is due absolutely or does not depend upon any contingency;
(2) any judgment in favor of the debtor against the garnishee, if the garnishee or the garnishee's property is liable on an execution levy upon the judgment;
(3) any debt owed by the garnishee to the debtor for which any negotiable instrument has been issued or endorsed by the garnishee;

(Footnote continued on next page.)

exceptions to the statute, those exceptions are construed to exclude all other exceptions. *See* Minn. Stat. § 645.19 (2014). None of the exceptions in subdivision 4 applies to a domain name.

We have previously concluded that the meaning of nonexempt personal property in a predecessor statute[7] included a certificate of indebtedness given by the United States for personal services;[8] shares of corporate stock not yet delivered to a shareholder;[9] state railroad bonds[10] and bearer bonds;[11] and the interest of a creditor in property conveyed to

_____

(Footnote continued from previous page.)
> (4) any indebtedness, money, or other property due to the debtor where the debtor is a bank, savings bank, trust company, credit union, savings association, or industrial loan and thrift companies with deposit liabilities;
> (5) any indebtedness, money, or other property due to the debtor with a cumulative value of less than $10; and
> (6) any disposable earnings, indebtedness, money, or property that is exempt under Minnesota or federal law.

Minn. Stat. § 571.73, subd. 4.

[7] *See* Minn. Gen. Stat., ch. 60, § 147 (1858) (stating "all other property in this territory" may be attached); Minn. Gen. Stat., ch. 66, § 150 (1866) (stating "service of the summons upon the garnishee shall attach and bind all the property, money or effects in his hands, or under his control" and "any and all indebtedness owing by him to the defendant"); Minn. Gen. Stat., ch. 66, § 167 (1878) (same); Minn. Gen. Stat., ch. 66, § 5309 (1894) (same).

[8] *Leighton v. Heagerty*, 21 Minn. 42, 46 (1874).

[9] *Wackerbarth v. Weisman*, 207 Minn. 507, 510-11, 292 N.W. 214, 215-16 (1940); *Puget Sound Nat'l Bank of Everett v. Mather*, 60 Minn. 362, 363-64, 62 N.W. 396, 397 (1895).

[10] *Banning v. Sibley*, 3 Minn. 389, 404-05 (Gil. 282, 298-99) (1859).

[11] *First Trust Co. of St. Paul v. Matheson*, 187 Minn. 468, 246 N.W. 1 (1932).

trustees, the proceeds of which were to be distributed to creditors.[12]  Moreover, under the statute, intellectual property may be sold and applied against judgment debts.  *See P.H. & F.M. Roots Co. v. Decker*, 111 Minn. 458, 461-63, 127 N.W. 417, 418-19 (1910).

Having described the plain and ordinary meaning of "intangible personal property" and our relevant case law on the topic, we return to the question of whether a domain name falls within the scope of the statute.  We conclude that a domain name is intangible personal property within the meaning of Minn. Stat. § 571.73, subd. 3(3) and is therefore subject to attachment by garnishment.  Three reasons support our conclusion.  First, a domain name logically falls within the plain meaning of "intangible personal property."  A domain name has no physical presence beyond being representative of the physical location on a server at which a user can access a website's content and obtain its information.  In effect, the domain name is the key that allows Internet users to access a website.  Moreover, a domain name is similar to other types of intangible personal property that we have previously concluded fall within the scope of the statute.  For example, a corporate share of voting stock is representative of the right to vote on corporate matters as expressed on the share of stock, and it may be redeemed for money.  A domain name registrant enjoys the right to possess, control, and use the domain name, as well as dispose of it as he or she would with other types of property.  Specifically, a registrant may use the domain name, or transfer or sell it to another party.  Further, all combinations of top-level and second-level domain names are unique, and thus a domain

---

[12]  *Nat'l Sur. Co. v. Hurley*, 130 Minn. 392, 395-97, 153 N.W. 740, 741-42 (1915).

11

name registrant has the right to exclude others from using that name. For example, there can be only one "mncourts.gov." In short, regardless of their roots in contractual rights, domain names share many of the characteristics traditionally associated with property.

Second, the scope of the statute is very broad, extending to "all other" intangible personal property not subject to the exemptions in subdivision 3 and the exceptions in subdivision 4. As previously stated, none of the exemptions or exceptions apply in this case. To be sure, there is an outer boundary to the scope of the statute, inherent in the meaning of the phrase "intangible personal property." We need not determine the exact location of that boundary in this case, but we conclude that domain names fall within it.

Third, we observe that a majority of courts that have considered the question have concluded a domain name is personal property. For example, in *Kremen v. Cohen*, the Ninth Circuit applied a three-part test to determine whether a property right exists in domain names under California law. 337 F.3d 1024, 1030 (9th Cir. 2002) (citing *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992)). Specifically, there must be a property interest capable of precise definition; the property interest must be capable of being exclusively possessed or controlled; and the putative owner must have established a legitimate claim to exclusivity. *Id.* Domain names, that court decided, satisfy each of these criteria. *Id.*

Systematic relies upon *Network Solutions, Inc. v. Umbro Int'l, Inc.*, 529 S.E.2d 80 (Va. 2000), to support its position that a domain name is a contract for services and therefore is not personal property within the meaning of Minn. Stat. § 571.73, subd. 3. This argument lacks merit. *Network Solutions* did not decide the question of whether a

domain name constitutes intangible personal property. The only question presented in *Network Solutions* was whether the right to use a registered Internet domain name may be garnished under Virginia law. *Id.* at 81. The Supreme Court of Virginia concluded that it may not, reasoning that the right to use a domain name is a "contract for services," and thus cannot be said to be "a liability on any person other than the judgment debtor." *Id.* at 86-88 (citing Va. Code § 8.01-511 (1950)). Because the statute in question stated that a garnishment summons may be issued with respect to "a liability on any person other than the judgment debtor," Va. Code. § 8.01-511, that court's analysis focused on whether a domain name could be considered a "liability," not on whether it constituted a form of intangible personal property. *Network Solutions*, 529 S.E.2d at 86. In fact, Network Solutions conceded during oral argument in that case that "the right to use a domain name is a form of intangible personal property." *Id.* at 86.

## C.

For the foregoing reasons, we conclude that an Internet domain name constitutes intangible personal property within the meaning of Minn. Stat. § 571.73, subd. 3(3), and is therefore subject to attachment by garnishment.

Affirmed.


HUDSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.